

Goodwin, Circuit Judge, concurred in part and dissented in part and filed opinion in which Browning and J. Blaine Anderson, Circuit Judges, joined.

Hufstedler, Circuit Judge, dissented and filed opinion in which Ely, Circuit Judge, joined.

**UNITED STATES of America, Appellee,**

**v.**

**Guadalupe RODRIGUEZ–GASTELUM, Appellant.**

**No. 76–2241.**

United States Court of Appeals, Ninth Circuit.

Jan. 30, 1978.

As Amended Feb. 23, 1978.

WRIGHT, Circuit Judge, with whom TRASK, CHOY, WALLACE, SNEED and KENNEDY, Circuit Judges, concur:

■ We took this case *en banc* to consider whether a suspect in a criminal investigation can waive his right to counsel after having initially made known his desire to have the assistance of counsel. We hold that a *per se* rule prohibiting such a waiver is neither necessary nor appropriate.

Rodriguez-Gastelum made incriminating statements after he was stopped while driving an automobile loaded with marijuana.[1] He was proceeding toward Tucson in a vehicle which had been under customs surveillance in a Nogales, Arizona, parking lot. Customs Officer Treto approached and advised appellant of his rights in both English and Spanish. Appellant responded that he understood his rights and had no objection to answering the officer's questions.

Treto asked who owned the car, and appellant said that he did not know. In response to further questions, appellant said that he was a mechanic delivering the car to Tucson. Treto then asked appellant to open the trunk. Appellant "appeared very nervous" and refused. At this point, Treto placed appellant under arrest and took him to the Drug Enforcement Administration (DEA) office for further questioning by Officer Brown.

For what followed, we quote from Officer Brown's testimony:

I told him that I would read his rights to him again, which I did in Spanish. At the end of the reading of these rights, the final question is, "Do you understand the rights?" And he said, "Yes, I understand, but I don't have money to pay for an attorney." I explained to him again that in that case, the Court here in Tucson would provide him an attorney.

I then asked him if he wanted to talk about what he had, and he said, "Okay, okay, but with an attorney." And I said, "Do you want to talk to me now without any attorney?" And to that he said, "That's fine."

Frank R. Zapata, Asst. Federal Public Defender, Tucson, Ariz., for appellant.

Stephen D. Dichter, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before BROWNING, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, SNEED, KENNEDY, and ANDERSON, Circuit Judges.

Appellant then made incriminating statements which were received in evidence at his trial. On appeal, he contends that his request for an attorney was disregarded and that Officer Brown's continued questioning deprived him of his Sixth Amendment right to the assistance of counsel.

The first issue is whether appellant's response, "Okay, okay, but with an attorney," was sufficient to invoke the protection of the Fifth Amendment and Sixth Amendment rules first announced in *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and expanded in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although we disagree as to the resolution of this issue,[2] our disposition of the second issue on appeal makes that disagreement unimportant. For purposes of this opinion, we assume that appellant's response was sufficiently clear to trigger the constitutional protection demanded by *Escobedo* and *Miranda*.

█ The second question is whether appellant's answer, "That's fine," to Officer Brown's clarifying question (whether appellant wanted to talk with him then without an attorney) constituted an effective waiver of his prior request for assistance of counsel.

█ Under *Miranda*, all questioning must stop once counsel has been requested. While we have little difficulty with that basic principle, the situation is more complex when the interrogation ceases, only to be resumed after an alleged reconsideration by the suspect.

The factual patterns vary. At times the accused talks to the same officer who gave him the *Miranda* warnings. Or he may talk to another officer who has a different style, personality, and approach. Sometimes the suspect talks to an undercover agent believing him to be a fellow in crime. Or the *Miranda* warnings are forgotten or ignored both by the prisoner and the officer.[3]

The question is not quite so difficult when the interrogating officer is uncertain as to the intention of the suspect, as was Officer Brown, and seeks only a clarification. That is the situation now before us.[4]

Counsel look to two recent Supreme Court cases for support for their respective positions. In *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Supreme Court held that a suspect who has chosen to remain silent with reference to questions about one crime can, after a renewed *Miranda* warning, be questioned about another crime. Last term, the Court held that a prisoner who had been arraigned and who had an attorney appointed could not be interrogated in the absence of his counsel. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

Both sides in the case at bar claim too much for these cases. *Mosley* held only that a suspect who has been properly advised of his rights, and who has invoked his right to silence, but not his right to counsel, can use his own judgment in talking to officers about other crimes if he is advised of his rights before each interrogation.

2. The author of this opinion thinks that appellant's purported request for the assistance of counsel was so ambiguous that, even under a *per se* rule, it could not have precluded Officer Brown from asking his follow-up question. Others may read the statement to indicate an unambiguous assertion of the right to counsel followed by an attempt to waive that right. Since this court took the case *en banc* to decide whether a *per se* rule is appropriate in such circumstances, and since we find that such a rule is not appropriate and that appellant waived his right to counsel, it makes little difference whether one reads the facts as does the author of this opinion or as do some other members of the court.

3. *See, e. g., United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), *cert. denied sub nom. Inciso v. United States*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *United States v. Flores-Calvillo*, No. 75–3785, (9th Cir. July 14, 1976; petition for rehearing pending); *United States v. Kinsman*, 540 F.2d 1017 (9th Cir. 1976); *United States v. Womack*, 542 F.2d 1047 (9th Cir. 1976); *Keiper v. Cupp*, 509 F.2d 238 (9th Cir. 1975); *Williams v. Nelson, Warden*, 457 F.2d 376 (9th Cir. 1972).

4. See note 6 infra.

*Brewer* expressly refrained from holding that a prisoner could never waive his right to counsel once asserted. 430 U.S. at 403–04, 97 S.Ct. 1232. The case held only that in the circumstances shown in that record there had been no such waiver. *Brewer* does teach, however, that the burden is greater when the government attempts to show a waiver after the right to counsel has been asserted than when the government attempts to show a waiver of the right to remain silent. 430 U.S. at 405 & n. 10, 97 S.Ct. 1232.

This circuit has not been consistent in its decisions on cases involving waiver of an asserted right to counsel.[5] In *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), *cert. denied sub nom. Inciso v. United States*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977), a panel found an implied waiver less than half an hour after the right to counsel had been explicitly asserted.

In *Pheaster*, FBI agents gave *Miranda* warnings. The defendant asked for an attorney and refused to answer questions. In a car en route to the county jail, an agent engaged in a "firm," "one-way conversation" with the defendant, primarily involving a recitation of the evidence against him. Intermittently, the agent asked where the kidnapping victim was being held. Upon hearing that a fingerprint on one of the notes had been positively identified as his, the defendant admitted his complicity and then cooperated with the agents.

The panel recognized a "key distinction between questioning the suspect and presenting the evidence available against him."[6] 544 F.2d at 366. The court noted that other panels of this and other circuits have relied on the same distinction in finding a waiver of asserted *Miranda* rights. *See United States v. Davis*, 527 F.2d 1110 (9th Cir. 1975); *United States v. Hodge*, 487 F.2d 945 (5th Cir. 1973).

The court also found "instructive" the Supreme Court's treatment of a "closely-related question" ("the effect of a suspect's indication that he desires to remain silent") in *Michigan v. Mosley, supra* :

> In *Mosley* the Court rejected a literal interpretation of *Miranda*, holding that the exercise of the right to remain silent does not preclude all further questioning. Rather, in the context of the particular facts of *Mosley*, the Court held that a confession made two hours after Mosley had indicated his desire to remain silent was admissible. . . . Although the specific holding in *Mosley* is not direct precedent for the resolution of this appeal, *Mosley* does indicate both a recognition that the procedure set out in *Miranda* is not as clear as the language of that opinion might suggest and a willingness to import a greater degree of flexibility in the application of *Miranda* to varying factual situations.

544 F.2d at 367. While "import[ing] a greater degree of flexibility [and realism] in

---

5. *See, e. g., United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), *cert. denied sub nom. Inciso v. United States*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *United States v. Flores-Calvillo*, No. 75–3785, (9th Cir. July 14, 1976; petition for rehearing pending).

6. Thus, the factual situation in *Pheaster* contrasts with that in *Brewer v. Williams*, where there was

> no serious doubt . . . that Detective Leaming deliberately and designedly set out to elicit information from Williams just as surely as—and perhaps more effectively than—if he had formally interrogated him.
>
> . . .
>
> Detective Leaming's "Christian burial speech" [was] tantamount to [an] interrogation.

430 U.S. at 399–400, 97 S.Ct. at 1239. In *Pheaster*, the officer was informing the defendant of the evidence against him so that the defendant could invoke or waive his constitutional rights based on a realistic appraisal of his situation.

In the instant case, it is even more difficult to characterize Officer Brown's follow-up question as continued "interrogation". The context clearly indicates that it was an attempt to clarify the defendant's intention.

The *Pheaster* court also relied on the fact that only a short period of time transpired between the assertion of the right and the waiver. 544 F.2d at 368. About 15 to 20 minutes had elapsed. In the instant case the waiver immediately followed the assertion of the right to counsel.

the application of *Miranda*," the panel recognized that "[t]he Government, of course, 'bears a heavy burden . . . to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to . . . counsel. *Miranda, supra*, 384 U.S. at 475, 86 S.Ct. 1602.' " 544 F.2d at 368.

Without an explicit indication that the asserted right had been waived, the panel still found that the government had satisfied its "heavy burden" of showing an implied waiver.

At about the same time that *Pheaster* was decided, another panel was faced with a case presenting a substantially similar issue. *United States v. Flores-Calvillo*, No. 75–3785, (9th Cir. July 14, 1976; petition for rehearing pending). On initial consideration, the *Flores-Calvillo* panel, one judge dissenting, applied a *per se* rule eliminating any possibility of waiver, once an assertion of a desire to have counsel has been made, until the suspect has actually consulted with counsel. When the instant case was taken *en banc*, the panel in *Flores-Calvillo* withheld issuance of the mandate and delayed action on a petition for rehearing pending our disposition.

The facts of *Flores-Calvillo* illustrate, as do the facts in *Pheaster* and in the instant case, that a *per se* rule would reach too far. In *Flores-Calvillo*, the defendant's car was searched at the port of entry in Calexico, California. Heroin was found and Flores-Calvillo was arrested. The inspector advised her of her rights. The defendant stated that she understood them and that she did not want to make a statement without an attorney being present. The inspector stopped questioning immediately and called the DEA. Agents Sears and Thomas arrived and learned that the defendant had been advised of her rights. The agents went to her cell and again advised her of her rights. She replied that she understood them, but that she did not know anything.

Agent Sears then responded, "Wait a minute, you do know some things about this, and I'd like to talk to you about it." Defendant said, "Okay," and then made incriminating statements.

The district court admitted the statements, finding that her subsequent willingness to talk was not the product of coercion by Agent Sears. The district court also asserted that "nothing in the *Miranda* decision suggests that questioning, with proper readvisement of rights and waiver, cannot continue." The panel reversed and, with a strong dissent from Judge Choy, adopted its *per se* rule. The majority said:

Within the narrow confines described by the *Mosley* majority opinion, a person in custody, who has asserted the right to silence, can subsequently waive it, but the waiver doctrine is not applicable when the person in custody has expressed a desire for counsel.

Slip Opinion at 3.

▮ After argument and consideration *en banc*, a majority of the court is now satisfied that the *per se* rule adopted by the panel in *Flores-Calvillo* is neither required by the Sixth Amendment nor consistent with good law enforcement. Rather, we hold that *Miranda* must be applied with the "flexibility and realism" espoused by the *Pheaster* panel. It makes little sense to say that, once having requested counsel, a prisoner may never, until he has actually talked with counsel, change his mind and decide to speak with the police without an attorney being present.

In rejecting a *per se* rule as the law of this circuit, we have been particularly influenced by Judge Renfrew's thoughtful opinion in *Pheaster* and by Judge Choy's dissent in *Flores-Calvillo*. Judge Choy had this to say:

Though *Miranda* may be the fountainhead, I do not believe that it speaks directly or definitively to the particular problem of a later voluntary waiver of a right once claimed. Certainly there is language in *Miranda* which could be taken as saying that once a request is made for a lawyer the suspect cannot be questioned again until an attorney is present, but I do not think that the Court was there considering the case—or precluding the possibility—of a later voluntary waiv-

er. There is also language in *Miranda* implying that the suspect cannot again be questioned after once claiming the right to silence, but *Mosley* specifically ruled otherwise, despite that language. I do not believe that we are barred from doing the same.[1][7]

*Mosley* does not, in the Court's own words, "involve the procedures to be followed if the person in custody asks to consult with a lawyer, since Mosley made no such request at any time." [423 U.S. at 101 n. 7, 96 S.Ct. 321] Only Justice White, in a concurring opinion not necessary to form the majority, suggested that a request for a lawyer differs from a request to remain silent by triggering a *per se* rule. True, the majority recognized that the two requests are distinguishable, *id.* at 104 n. 10, 96 S.Ct. 321, but the Court's opinion did not go so far as to establish the *per se* rule constructed in today's opinion.

Indeed, I believe that such a rule is contrary to the whole spirit of *Mosley.* As the majority there warned, at [423 U.S. at 102, 96 S.Ct. 321]:

[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests.

.    .    .    .    .

What if a suspect, after first refusing to make a statement without an attorney, voluntarily changed his mind? What if, without any prompting or coercion from the authorities, he begged them to take his confession? Would the majority still deny him the ability to make an informed and voluntary waiver of his rights to silence and to consult counsel? To do so would be to "imprison a man in his privileges," *Adams v. United States, ex rel. McConn,* 317 U.S. 269, 280, 63 S.Ct. 236, 87 L.Ed. 268 (1942), and I can see neither the logic nor the precedent requiring that.

*Per se* rules too often force us to lose touch with the reasons for their creation. The whole purpose of *Miranda,* and thus of its rule, is to protect the privilege against self-incrimination and to insure that any waiver is made "voluntarily, knowingly, and intelligently." 384 U.S. at 444, 86 S.Ct. 1602. Today's majority opinion goes far beyond this by precluding waivers which might be made "voluntarily, knowingly, and intelligently."

I would prefer a case-by-case adjudication, just as was done in *Mosley* if a suspect once claims the right to silence, to determine whether there has been such a waiver and whether the suspect's rights have been "scrupulously honored." *Mosley,* 423 U.S. at 103, 96 S.Ct. 321; *Miranda,* 384 U.S. at 479, 86 S.Ct. 1602. If the suspect had previously indicated that he wished to consult an attorney, special attention would have to be given to insure that he properly waived his right to legal

[7] [1] It is stated in *Miranda,* 384 U.S. at 474, 86 S.Ct. at 1628, that: "If the individual states that he wants an attorney, the interrogation must cease until one is present." Earlier in that paragraph, at 473–74, 86 S.Ct. 1602, 1628, however, the Court stated: "If the individual indicates in any manner, at any time prior [to] or during questioning, that he wishes to remain silent, the interrogation must cease. At that point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." Yet *Mosley* specifi-

cally approved later questioning of a suspect though the right to silence had previously been claimed. Similarly, see *Miranda,* at 444–45, 86 S.Ct. 1602, 1612: "If [the suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him." There may well be a logical distinction between the two situations, but I see nothing so strong as to require the application of a *per se* rule.

advice in making the separate decision to waive his right to silence. *See, e. g., United States v. Jackson,* 436 F.2d 39 (9th Cir. 1970). Depending on the circumstances, more than a new reading of the *Miranda* warnings a short time later might be required to guarantee that there was an effective two-fold waiver. Slip Opinion at 4–6.

■ As the Supreme Court pointed out in *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), properly states the test for determining when a suspect who has asserted his right to counsel later waives that right:

> "[C]ourts indulge every reasonable presumption against waiver" of fundamental constitutional rights . . . and . . we "do not presume acquiescence in the loss of fundamental rights." A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. (Citations omitted.)

Those joining in the concurring and dissenting opinion of Judge Goodwin agree that *Zerbst* states the applicable test, but they read it to mean that the government can show a waiver of the right to counsel only if it is "explicit, initiated by the suspect, and not in any way induced by the interrogators." Such a reading, in practical effect and under a different guise, reincorporates the *per se* rule that a majority of the court has today rejected.

■ The Supreme Court in *Zerbst* in no way precluded a government officer

from informing the defendant of circumstances which might contribute to an intelligent exercise of his judgment.[8] We understand that the interrogating officer may not badger the suspect or bring pressure intended to induce a change of mind. Nor can he coerce the suspect into reconsidering an assertion of his right to counsel. *Michigan v. Mosley, supra,* and *Miranda v. Arizona, supra,* compel that understanding. But in this case it is undisputed that there was no badgering, pressure, or coercion. The waiver was explicit, clear, and unequivocal.

The test proposed by the dissent reaches too far by insisting that the government interrogator cannot, under any circumstances, initiate or induce the waiver. We believe that district judges are capable of applying the *Zerbst* test to the many cases with widely varying factual circumstances brought before them. A *per se* rule, however disguised, would serve only to handcuff our law enforcement officers in the performance of their duties and to imprison the suspect in his alleged constitutional privileges.

AFFIRMED.

GOODWIN, Circuit Judge, concurring and dissenting; BROWNING and ANDERSON, Circuit Judges, joining.

I agree with the majority view that a *per se* rule in these cases is neither necessary nor desirable.

I do not agree, however, that the frightened Mexican in this case meant, when he said, "that's fine", to waive then and there the right to counsel which, a moment earlier, he was still trying to invoke. Nor do I agree with the majority's acceptance of a waiver in *United States v. Pheaster,* 544 F.2d 353 (9th Cir. 1976), *cert. denied sub nom. Inciso v. United States,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). The majority's strong reliance on *Pheaster* will

---

8. It is clear as well that the Court in *Brewer,* 430 U.S. at 399–400, 97 S.Ct. 1232, understood that communication between the defendant and an officer is not barred after assertion of the right to counsel. *Miranda* prohibits only continued "interrogation." *See* note 6 *supra.*

encourage trial courts to find waivers by prisoners where police persist in techniques which force the suspect constantly to reassert his or her right to counsel.

I would hold police interrogators to a strict standard of waiver as set forth in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and as restated in *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The waiver must be explicit, initiated by the suspect, and not in any way induced by the interrogators. Any more lenient rule simply invites the ingenious officer to invent new stratagems to produce colorable waivers of the right to counsel.

I would reverse and remand with instructions to exclude the statements Rodriguez-Gastelum made after he said he wanted an attorney.

HUFSTEDLER, Circuit Judge, with whom ELY, Circuit Judge, joins, dissenting:

The majority opinion cannot be reconciled with *Miranda v. Arizona* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, as construed in *Michigan v. Mosley* (1975) 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313, nor with *Brewer v. Williams* (1977) 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424.

*Miranda* requires that no statement of a person in custody which is made after that person has requested counsel can be admitted unless and until the suspect has talked to his lawyer. The Supreme Court could not have chosen more explicit language to state that principle in *Miranda* : "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." (384 U.S. at 474, 86 S.Ct. at 1628.)

The Supreme Court has read *Miranda* to mean what it says when the right to counsel is asserted, rather than merely the right to silence. The majority opinion in *Mosley* meticulously distinguishes the right to silence from the right to counsel.

When a suspect has asserted only his right to silence, and not his right to counsel, interrogation can be resumed if " 'his right to cut off questioning' was 'scrupulously honored,' " and if he thereafter waives his right to silence. (423 U.S. at 104, 96 S.Ct. at 326.) Statements made after questioning has been resumed are admissible upon the Government's bearing its heavy burden of proof of waiver when only the suspect's right to silence is involved. In contrast, however, questioning of the suspect cannot be resumed after the individual has asserted his right to counsel until the suspect has had an opportunity to consult with counsel. The majority opinion in *Mosley* twice states the point specifically: "The present case does not involve the procedure to be followed if the person in custody asks to consult with a lawyer since Mosley made no such request at any time. The procedures are detailed in the *Miranda* opinion as follows [*quoting* 384 U.S. at 474, 86 S.Ct. 1602]." And again: "The dissenting opinion asserts that *Miranda* established a requirement that once a person has indicated a desire to remain silent, questioning may be resumed only when counsel is present. *Post* [423 U.S.] at 116–117, 96 S.Ct. at 326. But clearly the Court in *Miranda* imposed no such requirement, for it distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and directed that 'interrogation must cease until an attorney is present' only '[i]f the individual states that he wants an attorney. 384 U.S. at 474, 86 S.Ct. 1602.' " (423 U.S. at 104, n. 10, 96 S.Ct. at 326.)

No question of waiver of counsel can arise unless and until a properly advised suspect, who has asserted his right to a lawyer (no matter how inarticulately the request has been made) has consulted his lawyer. Thereafter, if the suspect responds to resumed interrogation in his lawyer's absence, we then inquire whether the Government has carried its burden of proving that the suspect's statements were made after a knowing, intelligent, and vol-

untary waiver of counsel. Accordingly, no statement made after counsel has been requested and before counsel has been furnished can be admitted without violating *Miranda*. The *Mosley* majority makes that point expressly and repeatedly.

In his concurring opinion, Mr. Justice White underlines the point that statements made by a suspect who has requested counsel must be excluded when those statements are obtained before the suspect has had an opportunity to consult with counsel: "As the majority points out, the statement in *Miranda* requiring interrogation to *cease* after an assertion of the 'right to silence' tells us nothing because it does not indicate how soon this interrogation may resume. The Court showed in the very next paragraph, moreover, that when it wanted to create a *per se* rule against further interrogation after assertion of a right, it knew how to do so. The Court there said '[i]f the individual states that he wants an attorney, the interrogation must cease *until an attorney is present.*'" (*Michigan v. Mosley, supra,* 423 U.S. at 109–10, 96 S.Ct. at 329 (White, J., concurring) (citations omitted; emphasis in original).)

*Miranda*'s protection of the right to counsel was reinforced in *Brewer v. Williams, supra,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424. In *Williams,* no in-custody interrogation occurred until Williams had consulted with not one, but two lawyers. His Des Moines lawyer, McKnight, advised Williams that Des Moines police officers would pick him up and that the "officers would not interrogate him or mistreat him, and that Williams was not to talk to the officers about Pamela Powers until after consulting with him upon his return to Des Moines. . . . [I]t was agreed between McKnight and the Des Moines police officials that [the officers] would drive to Davenport to pick up Williams . . . and that they would not question him during the trip." (430 U.S. at 391, 97 S.Ct. at 1235.) Meanwhile, Williams had also consulted with another lawyer, Kelly, during his arraignment. Kelly also "advised him

not to make any statements until consulting with McKnight back in Des Moines." (430 U.S. at 391, 97 S.Ct. at 1236.) The police officers obtained incriminating information during the drive. Neither of Williams' lawyers was present.

The trial court overruled defense counsel's *Miranda* objections to the admission of the incriminating statements ruling that "Williams had 'waived his right to have an attorney present during the giving of such information.'" Williams appealed his murder conviction, which was affirmed by the Iowa Supreme Court in a divided opinion. A federal district court granted federal *habeas corpus* on the grounds that Williams had been denied his right to counsel, he had been denied the protection of *Miranda*, his statements were not voluntary, and he had not waived any of these rights. The Court of Appeals affirmed. The Supreme Court affirmed the Court of Appeals, holding that the interrogation denied Williams the right to effective assistance of counsel and that the State did not carry its burden of proving waiver. *Williams* held that a suspect could waive his right to counsel after counsel had been furnished to him and after he had consulted with his lawyer, but no statement of the suspect made during in-custody interrogation was admissible in the absence of counsel after the right to counsel attached, unless the State carried its burden of proving waiver.

Rodriguez' case is very simple. Special Agent Brown of the Drug Enforcement Administration advised Rodriguez of his *Miranda* rights after his arrest. Rodriguez told Brown that he had no funds to hire a lawyer. Brown responded that a lawyer would be appointed for him and asked Rodriguez if he wanted to talk to the agent about the incident (driving a load car across the border carrying marihuana). According to Brown's testimony, Rodriguez answered, "Okay, but with a lawyer too." Despite this unmistakable request for a lawyer, Brown continued to interrogate Rodriguez, ultimately obtaining incriminating statements from him which were introduced over objection.

This case presents a routine *Miranda* violation. Rodriguez asked for a lawyer, and the interrogation did not cease. He had no chance to talk to a lawyer because no lawyer had been furnished to him. The statements that Rodriguez gave in response to the continued questioning were flatly inadmissible under both *Miranda* and *Mosley*.

The waiver of counsel question is not even presented on this record. I would, therefore, direct the suppression of the evidence under *Miranda*, reverse and remand for a new trial.[1]

1. If it were necessary to reach the merits, I would have no difficulty in holding no waiver occurred. There was scarcely a pause, let alone cessation of questioning, and nothing in the record suggests that the Government met the heavy burden imposed upon it by *Johnston v. Zerbst* (1938) 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, *reiterated in Brewer v. Williams, supra,* 430 U,S. at 404, 97 S.Ct. 1232.