**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John DOE, Defendant-Appellant.**

No. 79–1379.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 9, 1980.

Decided Nov. 19, 1980.

As Corrected Jan. 16, 1981.

As Corrected April 2, 1981.

Judith E. Bendich, Seattle, Wash., for defendant-appellant.

Jerry Diskin, Asst. U. S. Atty., Seattle, Wash., for plaintiff-appellee.

Before SNEED and FLETCHER, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

■ John Doe,[1] defendant-appellant, was convicted of possession of heroin with intent to distribute and importation of heroin. The issues on this appeal relate primarily to alleged errors with respect to the pretrial suppression hearing and the sentencing pro-

ceeding. We affirm the conviction, but remand for resentencing.

## I. Factual Background

On December 22, 1978, Doe was aboard an airline flight from Seoul, Korea, to Seattle, Washington. He was accompanied by Richard Roe.[2] Both had been drinking during the flight. While in flight Roe offered a serviceman $500 to carry a duffel bag through customs. This offer was overheard by another passenger. The serviceman accepted the offer and upon landing in Seattle passed through a United States Customs checkpoint with the bag. Customs officers had been informed of the inflight conversation, however, and the serviceman was

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. Pseudonyms have been substituted for the names of defendant-appellant and three other persons named in the opinion.

Following the filing of the original opinion, appellant moved the court that in the published opinion pseudonyms be substituted for appellant and the other persons therein named. This motion was denied, but the opinion was withdrawn and refiled as a memorandum and not to be published. Counsel for the Government, pursuant to Rule 21(f), Rules of the United States Court of Appeals for the Ninth Circuit, then requested that the court's decision be published as an opinion because of the issue regarding allocution by Government counsel at the time of hearing, and that the pseudonyms suggested by counsel for appellant be made for the protection of the appellant, who is serving a prison sentence. Counsel for appellant joined in the request.

Counsel were requested to inform the court of any precedent with regard to the request to publish an opinion using pseudonyms. Counsel have called attention to a number of cases where pseudonyms have been used. While these cases are not precisely in point, they do support the use of pseudonyms in this case.

We recognize that the identity of the parties in any action, civil or criminal, should not be concealed except in an unusual case, where there is a need for the cloak of anonymity. Where it is necessary, however, to protect a person from harassment, injury, ridicule or personal embarrassment, courts have permitted the use of pseudonyms. See, e. g., United States v. Doe, 556 F.2d 391, 393 (6th Cir. 1977), where the court, in accordance with appellant's motion, "changed the style of the case to show 'John Doe' as appellant in order to prevent unnecessary dissemination of information

about [a] conviction which [had] been set aside" pursuant to the Youth Corrections Act; United States v. Indian Boy X, 565 F.2d 585 (9 Cir. 1977), where the major issue before this court was whether a juvenile appellant's murder confession should have been suppressed, and fictitious names were used, the court noting that it had attempted throughout the opinion to protect the identity of the appellant in the spirit of the Juvenile Delinquency Act; Doe v. Deschamps, 64 F.R.D. 652 (D.Mont.1974) and cases there cited.

The Supreme Court has given implicit recognition to the use of pseudonyms in the abortion cases, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). In Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), two cases challenging the constitutionality of Connecticut statutes prohibiting the use of contraceptive devices and the giving of medical advice in their use, the Court noted that the Supreme Court of Errors of Connecticut had approved suit under fictitious names "in the special circumstances of the cases." Id. 498 n. 1, 81 S.Ct. 1753 n.1.

While these cases are all factually distinguishable, we conclude that an "unusual case" is presented. The appellant is serving a long prison sentence. Both the Government and the appellant urge the need for his protection. In a related habeas corpus proceeding the file was sealed, the parties and the court agreeing that due to appellant's testimony as a government witness, he faced a risk of serious bodily harm if his role on behalf of the Government were disclosed to other inmates. The use of pseudonyms may prevent the dissemination of information within the prison with respect to appellant's cooperation with the Government.

2. Pseudonym.

stopped and taken to an examination room by an inspector. An inspection of the bag revealed ten packages of white powder which later proved to be approximately eight pounds of 92% heroin. When the serviceman observed the contents of the duffel bag he immediately implicated Doe and Roe, who were taken into custody, removed to a secondary examination room, and advised of their *Miranda*[3] rights. No questioning took place.

The Drug Enforcement Administration (DEA) was notified and took primary responsibility for the subsequent investigation. When Special Agent Boggs of the DEA took custody of Doe he was informed by the Customs officers that Doe had been advised of his rights. Doe interjected that he wanted an attorney. Boggs told Doe he did not want to question him then, to "sit tight until we get some things straightened out," and left the room. Doe was not questioned. The request for counsel was repeated.

Shortly thereafter, Special Agent Snyder of the DEA, after again advising Doe of his constitutional rights, asked Doe whether he was willing to cooperate in the DEA's investigation of the drug smuggling scheme. Doe did not demand to see an attorney or exercise his right to remain silent. Rather, he stated that he had been in prison before, that cooperation meant nothing, and that there was nothing the agent could do for him. No questioning was carried out at this time, and Doe was transported to the Port of Seattle Police Office.

Approximately one-half hour later Doe asked to talk to Roe. Roe was brought to Doe and the two were allowed to confer within the agents' hearing. The agents testified at the suppression hearing that after talking with Roe, Doe turned to the agents and stated that the heroin was his. Doe denied making this statement. The agents advised Doe that since he had requested an attorney, no questioning could occur until one was present. Doe then expressed an interest in cooperating in the DEA's investigation, waived his right to an attorney, and answered the agents' questions concerning his participation in the heroin importation scheme. The agents informed Doe that they had no authority to enter into a plea bargain.

Doe and Roe were transported to the United States Attorney's office in Seattle. During the ride Doe inquired about possible sentences for those who cooperated. Upon arrival Doe met with Assistant United States Attorney Sim. Doe agreed to cooperate in the DEA's investigation of the importation scheme and to take the drugs to San Francisco to set up their delivery. Government witnesses testified at the suppression hearing that Doe attempted to negotiate Roe's immediate release, but did not ask for any consideration of his own case. This was denied by Doe who now contends that as a part of his alleged agreement the Government would recommend a reduced sentence for him.

Doe was brought before a United States Magistrate where he waived his right to an attorney, and indicated a desire to cooperate with the authorities. He was released to the custody of DEA agents and taken to a motel room where he was questioned and plans for delivery of the heroin to the intended recipients in California were discussed. While his story apparently changed some in the retelling, it is admitted that he cooperated with the DEA in all respects. The plans to carry out a controlled delivery were aborted when agents became concerned about the safety of the operation.

## II. *Proceedings in District Court*

In an indictment returned on January 16, 1979, Doe and Roe were charged with conspiring to violate 21 U.S.C. § 841(a) by possessing heroin with intent to distribute (Count I), possession of heroin with intent to distribute (Count II), and importing heroin (Count III).

Doe filed pretrial motions (1) to dismiss the indictment for failure to comply with a plea bargain, or, in the alternative, enforce the plea bargain; (2) to suppress statements made to DEA agents at the airport;

---

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

and (3) to sever the defendants' trials. Following an evidentiary hearing on February 26, 1979, the three motions were denied.

On March 8, 1979, prior to trial, the court heard additional arguments regarding the alleged plea bargain and Doe's motion to suppress statements, rejected offers of proof, and again denied Doe's motions. After the Government rested its case, the motion for severance was renewed. At that time Doe made a *pro se* statement to the court that he had a "moral obligation" to testify as a witness in defense of Roe, and that the court's order denying severance "put[s] me in the position of forcing me to take the stand, or have a miscarriage of justice happening here." The motion to sever was again denied. Doe was called to testify by counsel for Roe. Doe fully incriminated himself and testified that Roe knew nothing of the heroin. Doe was acquitted on Count I and found guilty on Counts II and III. Roe was acquitted on all counts.

At the sentencing hearing on March 11, 1979, the court refused a request of the prosecuting attorney to address the court. The court imposed consecutive sentences of eight years on Count II and seven years on Count III.

### III. Contentions on Appeal

Doe contends on appeal that (1) a new evidentiary hearing is required because (a) the trial court "improperly excluded testimony relevant to the substance of the plea agreement", and (b) he was denied counsel during plea negotiations; (2) the trial court abused its discretion in refusing a severance; and (3) Doe was denied his due process right to a fair sentencing hearing.

4. Doe recognizes that since Roe was found not guilty on all counts, this aspect of the alleged agreement is moot.

5. There is apparently no contention that the Government and Doe reached an agreement that a particular sentence would be recommended or that Doe ever offered to plead guilty.

6. Rule 11(e)(1) reads in pertinent part:
 The attorney for the government and the attorney for the defendant or the defendant

### IV. Alleged Plea Agreement

Doe contends that there was a plea agreement, i. e., "that in exchange for his cooperation, charges would be dropped against Roe[4] and the Government would recommend a reduced sentence for Doe."[5] The Government contends that there was no plea agreement, calling attention to the testimony of the Assistant United States Attorney that Doe "never once even suggested that anything be done for his case, always it was Roe's case."

In support of his contention that there was a plea agreement, Doe attempted to introduce the testimony of his brother relative to a conversation between the brother and Agent Boggs. In an offer of proof, counsel stated, *inter alia*, that the brother would testify that "Agent Boggs had indicated that with John Doe's cooperation they were working out an agreement with regard to the disposition of the case against Mr. Roe, and they were recommending a reduced sentence with regard to John Doe." The court rejected the offer of proof on the grounds that it was inadmissible hearsay and that Federal Rule of Criminal Procedure 11(e)(1) contemplates that only government attorneys could enter into plea bargains.[6]

While there may be merit in appellant's contention that the testimony of Doe's brother was admissible as an exception to the hearsay rule under Federal Rule of Evidence 801(d)(2)(D)[7] and that the trial court read Fed.R.Crim.P. 11(e)(1) too narrowly, we cannot agree with appellant that he was prejudiced by the exclusion of his brother's testimony.

when acting pro se may engage in discussions with a view toward reaching an agreement. . . .

7. Fed.R.Evid. 801(d)(2)(D) provides:
 A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship. . . .

Appellant argues that his brother's testimony would have shown that he was engaged in plea negotiations and that his statements accordingly were inadmissible under Fed.R.Crim.P. 11(e)(6), which provides that evidence of "statements made in connection with, and relevant to" a plea of guilty or an offer to plead guilty are "not admissible in any civil or criminal proceeding against the person who made the plea or offer." See also Fed.R. of Evid. 410. This court, following *United States v. Robertson*, 582 F.2d 1356, 1366 (5 Cir. 1978) (en banc), has adopted a bifurcated test to establish the admissibility of statements made during what are assertedly plea negotiations:

> [t]he trial court must apply a two-tiered analysis and determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.

*United States v. Pantohan*, 602 F.2d 855, 857 (9 Cir. 1979); *United States v. Castillo*, 615 F.2d 878, 885 (9 Cir. 1980).

While the record is replete with references to "plea bargaining", we find nothing to show Doe ever pled or offered to plead guilty. He was not engaged in plea negotiations, but rather was attempting to exculpate Roe by inculpating himself, making the best of a bad situation by cooperating in the DEA investigation.[8] At most he claimed that in exchange for that cooperation the Government agreed to recommend a reduced sentence. Assuming that this agreement was made, there is no evidence of the Government's failure to comply with its promise to recommend a reduced sentence. As discussed *infra*, the court at the time of sentencing denied the right of Government counsel to allocute and in imposing sentence apparently disregarded evidence of Doe's cooperation.

## V. *The Right to Counsel*

Appellant contends that he was deprived of his Sixth Amendment right to counsel when the Government elicited admissions from him after his repeated requests for counsel and again when he waived his right to counsel in reliance upon unfulfilled promises made by the Government. Neither contention is supported by the record.

This court in *United States v. Rodriguez-Gastelum*, 569 F.2d 482 (9 Cir. 1978) (en banc), recognized that the Supreme Court has not mandated a *per se* rule that would eliminate any possibility of a waiver of the right to counsel after a suspect has requested an attorney. The determination of whether there has been an intelligent waiver of the right to counsel must depend upon the particular facts and circumstances of each case. *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); reiterated in *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424, *reh. denied*, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 240 (1977). A *per se* rule "would serve only to handcuff our law enforcement officers in the performance of their duties and to imprison the suspect in his alleged constitutional privileges." *Rodriguez-Gastelum, supra*, at 488.

Doe was repeatedly advised of his *Miranda* rights and he was not questioned prior to his meeting with Roe. Following that meeting he indicated a desire to cooperate in the DEA investigation and waived his right to counsel. From our review of the record we are satisfied that the district court properly held that his waiver was "knowingly and intelligently" made.

Appellant next argues that when he appeared before the magistrate he waived his right to counsel in reliance on his belief that he had reached a plea bargain with the United States Attorney, and was induced to

---

8. Even assuming, *arguendo*, that all of the statements contemplated a plea bargain and were excludable under Rule 11(e)(6), Doe was not prejudiced by their admission. In his trial testimony he fully incriminated himself. Likewise his closing argument contained a complete confession of guilt. Any admission he made to DEA agents in advance of trial did not affect the finding of guilt.

do so by representations that an attorney would slow down the investigation. The Assistant United States Attorney testified that no deal was ever reached, that he had rejected Doe's demand that the Government release Roe, and that he made no representation to Doe that an attorney would slow down the investigation. DEA agent Boggs testified that he did tell Doe that his election not to have counsel would speed up the investigation, but that he did so only after Doe had appeared before the magistrate and waived his right to counsel. Thus, the existence or extent of the possible impact of either of these factors on the voluntariness of Doe's waiver of the right to counsel is a question of credibility. The trial judge had the opportunity to observe and assess the credibility of the witnesses. After hearing the testimony he concluded that Doe's waiver was voluntary, and that there was no plea agreement. Those conclusions are supported by the record.[9]

### VI. Severance of Trials

Co-defendants jointly charged are, *prima facie*, to be jointly tried. Fed.R. Crim.P. 8; *United States v. Gay*, 567 F.2d 916, 919 (9 Cir.) *cert. denied*, 435 U.S. 999, 98 S.Ct. 1655, 56 L.Ed.2d 90 (1978). The granting or denial of a severance trial under Fed.R.Crim.P. 14[10] is a matter within the trial court's discretion and reversal is appropriate only if an abuse of discretion has been shown. *United States v. Campanale*, 518 F.2d 352, 359 (9 Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 *reh. denied*, 424 U.S. 950, 96 S.Ct. 1422, 47 L.Ed.2d 356 (1976), citing *Schaffer v. United States*, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). The defendant must demonstrate that a joint trial is "so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the

court's discretion to sever." *United States v. Brashier*, 548 F.2d 1315, 1323 (9 Cir. 1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 565 (1977). Appellant's burden of demonstrating prejudice is a difficult one, and a trial judge's ruling will rarely be disturbed on review. *United States v. Campanale*, 518 F.2d at 359.

Appellant contends that the denial of his motion for severance placed him in the position of either exercising his Fifth Amendment right to remain silent or taking the stand to provide evidence necessary to exculpate Roe. In other words, he argues that forcing him to honor his "moral obligation" to testify on behalf of his co-defendant unconstitutionally compelled him to testify against himself.

Clearly Doe was not compelled to testify. It is well settled that a defendant may not call a co-defendant to the witness stand, *United States v. Gay*, 567 F.2d at 918; *United States v. Roberts*, 503 F.2d 598, 600 (9 Cir. 1974), *cert. denied*, 419 U.S. 1113, 95 S.Ct. 791, 42 L.Ed.2d 811 (1975). Roe was powerless to compel Doe to provide exculpatory evidence on his behalf. Doe's election to do so was his own decision.

If the severance motion had been granted, Doe could of course effectively exercise his right to remain silent at his own trial and give exculpatory testimony in the trial of Roe only in the event his own trial was held first. If Roe's trial was held first, Doe's exculpatory testimony could be used against him at his own trial. In other words, any claim of prejudice from a joint trial was in effect conditioned upon his own trial being held first.

In *United States v. Gay, supra*, a co-defendant offered to give testimony at a separate trial of the defendants which would exculpate the defendants, but the

---

**9.** In any event, no prejudice flowed from Doe's waiver of counsel during his appearance before the magistrate. None of the statements he subsequently made while cooperating in the DEA's attempt to send the heroin to its intended recipients were offered against him at trial.

**10.** Fed.R.Crim.P. 14 provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . .

offer of the co-defendant was expressly based on the condition that he be tried before the defendants. The court affirmed the denial of the severance motion, noting that the trial court simply refused to allow the defendants to "play games" or grant any of the defendants any rights they "would not have enjoyed but for the joint indictment." 567 F.2d at 920–21. The effect here is the same even though no conditional offer was expressed. While it may be proper in some circumstances to allow a separate prior trial of a defendant so that he might provide exculpatory testimony for a co-defendant, it was not an abuse of discretion for the court to deny the motion in this case. The joint trial was not "so prejudicial . . . as to require the exercise of [the trial judge's] discretion in only one way, by ordering a separate trial. . . . *Id.* at 919; *Parker v. United States*, 404 F.2d 1193, 1194 (9 Cir. 1968), *cert. denied*, 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782, *reh. denied*, 395 U.S. 941, 89 S.Ct. 2003, 23 L.Ed.2d 460 (1969).

## VII. *The Sentencing Hearing*

Appellant contends that he was denied his due process right to a fair sentencing hearing because counsel for the Government was denied his right to allocute, contrary to Fed.R.Crim.P. 32(a)(1), and that the trial court acted on misinformation and conjecture.

Fed.R.Crim.P. 32(a)(1) as initially promulgated was designed to allow the defendant to address the court prior to sentencing. In 1975 the rule was amended and now expressly provides the prosecution with the right to address the court before sentence is imposed. It reads:

> Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment. The attorney for the Government shall have an equivalent opportunity to speak to the court.

The Government concedes that "the trial court did not strictly comply with the provisions of Rule 32, . . . in that he denied counsel for the Government an opportunity to allocute prior to pronouncing sentence," [11] but argues that Doe cannot now complain because he did not object to the procedure and in any event was not prejudiced.

■■■ Initially we recognize that a trial judge has a wide discretion in determining the sentence to be imposed and may consider relevant facts in the defendant's personal history. *Williams v. New York*, 337 U.S. 241, 246–47, 69 S.Ct. 1079, 1082–83, 93 L.Ed. 1337 (1949); *United States v. Beecroft*, 608 F.2d 753, 762 (9 Cir. 1979). Nevertheless, if justice is to be done the sentencing judge should know all of the facts. *Harris v. United States*, 382 U.S. 162, 166–67, 86 S.Ct. 352, 355, 15 L.Ed.2d 240 (1965). To that end the judge "is required to listen and to give serious consideration to any information material to mitigation of punishment." *United States v. Malcolm*, 432 F.2d 809, 819 (2 Cir. 1970). While appellate courts have little, if any, power to review the appropriateness of legal sentences, they do have a duty "to insure that rudimentary notions of fairness are observed in the process at which the sentence is determined." *United States v. Espinoza*, 481 F.2d 553, 558 (5 Cir. 1973). This includes concern for "the probable accuracy of the informational in-

---

11. At the beginning of the sentencing proceedings Assistant United States Attorney Diskin requested permission to make a statement. In denying the request, the following colloquy occurred:

> THE COURT: I don't think I have to hear you, do I? Is there any rule that says I do?
> MR. DISKIN: I think Rule 32 indicates that the Court should take into consideration all the information that can be made available to it.
> THE COURT: Well I think I have as much information as you do, Counsel.
> MR. DISKIN: I respectfully submit there is one thing you don't know.
> THE COURT: Well I don't want to hear from you in any case.

puts in the sentencing process." *United States v. Weston*, 448 F.2d 626, 634 (9 Cir. 1971), *cert. denied*, 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972).

 It is true, as the Government notes, that both Doe and his counsel made extended statements prior to sentencing, admitting six prior felony convictions, recognizing that a prison sentence was proper,[12] but requesting leniency by reason of Doe's cooperation with the Government. It is clear, however, that the court did not accept the statements of Doe or his counsel relative to Doe's cooperation with the DEA. During the colloquy between the court and Doe, the court said repeatedly that he did not believe Doe.[13] In particular, the record indicates that the court questioned statements made by both Doe and his counsel relative to the involvement of a Mrs. Smith[14] and a Mr. Jones[15] as the principal drug dealers and distributors.[16] Any questions which the court might have entertained with respect to Doe's cooperation with the DEA, the involvement of Mrs. Smith and Mr. Jones, and information Doe furnished the DEA regarding Smith and Jones could have been clarified by the prosecuting attorney. In fact, the statement of the prosecuting attorney might well have been critical in view of the court's obvious distrust of the statements made by Doe and his counsel.

In *United States v. Malcolm, supra*, the court recognized that, "One of the important functions of the prosecutor upon a sentence is to make sure that all information in his possession material to punishment and favorable to the accused is presented to the court and that the sentence is not based on mistakes of fact or faulty information." 432 F.2d at 818; citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).[17] See also American Bar Association Standards, Sentencing Alternatives and Procedures, § 5.3(d)(ii) (1968). Rule 32(a)(1) contemplates that the statement of the attorney for the Government shall include information favorable to the accused as well as to the Government.

The Government apparently does not question this obligation on the part of the prosecutor, but argues that Doe was not prejudiced because it is "unlikely that the Government's allocution would have been helpful to Doe." It is true, of course, that the record does not disclose what the Government attorney would have said in his statement or what answers he might have made to questions regarding Doe's cooperation, including information he furnished with respect to the involvement of Smith and Jones. It is possible that his statement would have contradicted the statements made by Doe and his attorney. The reverse is also true. The statement might have verified Doe's claim of extensive cooperation in the continuing investigation, including the fact that he had furnished information leading to the identification of Smith and Jones as the principal drug dealers.

Under the circumstances we are convinced that the trial court should have per-

---

12. The record does not support the Government's contention that "Doe's attorney even suggested the very sentences which were received." Doe's attorney did suggest a sentence of seven or eight years, but the sentences imposed for the two counts totaled 15 years.

Doe and his counsel recognized that the court could impose a maximum sentence of 30 years on the two counts and argued that Doe would have to serve a substantial portion of any sentence imposed.

13. At one point the court said:

"... I don't care what your cooperation was. It makes no difference to me. I don't believe you."

14. Pseudonym.

15. Pseudonym.

16. Counsel stated to the court that information furnished by Doe led to the indictment of Mrs. Smith. Appellant's brief states that subsequent to Doe's trial indictments were returned against both Smith and Jones. This is not questioned in the Government's brief.

17. The rationale in *Malcolm* is a corollary to the principle, long recognized by this court, that a defendant has a right to a sentence untainted by false or unreliable information. See, e. g., *United States v. Weston, supra*, 448 F.2d at 628–633; *Farrow v. United States*, 580 F.2d 1339, 1358–59 (9 Cir. 1978).

mitted the Government attorney to make his requested statement and given the Government an opportunity to either verify or dispute the statements presented by Doe and his counsel which were obviously rejected by the court. We conclude that a remand for a new sentencing hearing and resentencing are required. We express no opinion on the propriety of any sentence which might be imposed.

 Appellant argues that the case should be remanded to a different judge. This court has recently recognized in two cases, *United States v. Arnett*, 628 F.2d 1162 (9 Cir. 1979), and *United States v. Ferguson*, 624 F.2d 81 (9 Cir. 1980), that absent proof of personal bias, remand to a new judge is reserved for "unusual circumstances." Three criteria must be considered in determining whether those circumstances are present: (1) whether the original judge could reasonably be expected to put out of his mind previously expressed views or findings that were subsequently found to be erroneous; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste or duplication of effort out of proportion to the gain realized in preserving the appearance of fairness. *United States v. Ferguson*, 624 F.2d at 83–84.

In *Ferguson* the court concluded that the district court had abused its discretion when sentencing a defendant in a probation revocation hearing. With respect to the first factor in the tripartite test set out above, the court said:

> Because the district judge created the error in this case and because he was so adamant in his refusal to take account of mitigating circumstances, we cannot reasonably conclude that he would now be able to put his previous errors out of his mind in resentencing this defendant. Or he may tend to overreach in favor of the defendant in an effort to correct his past mistakes.

624 F.2d at 83. Here too the judge created the error in refusing to permit Government counsel to make the requested allocution statement. The court was adamant in questioning and rejecting all claims of cooperation which might mitigate punishment. We conclude that the appearance of fairness would best be served by remand to another judge. Though there may be some duplication of effort, a new sentencing hearing will be required whether the resentencing is assigned to the original judge or a new judge. We do not believe resentencing by another judge would entail waste and duplication out of proportion to the gain in preserving an appearance of fairness.

The conviction of appellant is affirmed. The sentence is vacated, and the case is remanded to the district court for resentencing by a new judge.

SNEED, Circuit Judge, dissenting:

On appellant's motion, and with the government's concurrence, the majority has agreed to substitute a pseudonym for appellant's true name throughout our opinion. The appellant claims this is necessary to protect him from retaliation in prison for his cooperation with the government, which is described in our opinion. It is from this substitution of a pseudonym that I dissent.

Generally court proceedings should be conducted in public and when so conducted there is normally no justification for not reflecting in any appellate opinion the parties as they were known in the proceeding below. To do otherwise must be regarded as a departure from the strong tradition of publicity in the courts and should be limited to the "unusual case." *See Doe v. Deschamps*, 64 F.R.D. 652, 653 (D.Mont.1974) (three-judge court). In my view this is not such a case. Here the appellant made his arrangement with the government and now seeks to avoid one of the predictable consequences of his cooperation. Whatever its structure that arrangement did not include assurances of anonymity, nor would it bind this court if it had. We should decline to add to the government's storehouse of tools with which to procure the cooperation of witnesses and informants when to do so compromises the openness of the courts.

Our hesitancy should be all the greater in a case such as this one in which anonymity at this late date is of dubious effectiveness.

Beyond the arguments based on reason, no statute or federal rule authorizes the practice approved by the majority. No reported case of which I am aware approves of such a practice on facts similar to these or in the procedural posture in which the appellant's motion came to us.[1] We should not lay the foundation here.

---

1. Of the cases cited to us by the parties, the vast majority concerned instances in which anonymity was closely connected to the very rights asserted by the party requesting it. In these cases the plaintiffs were required to reveal information of an intimate and personal nature in order to vindicate constitutional or statutory rights grounded in the protection of privacy. *See, e. g., Doe v. Deschamps, supra,* and cases cited therein. There is some logic in cooperating to provide anonymity when publicity would inflict the very injury the litigant seeks to avoid by resort to the courts. The practice of providing pseudonyms should be extended to other situations only rarely. *See Southern Methodist University Association of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 712–13 (5th Cir. 1979); *Lindsey v. Dayton-Hudson Corp.,* 592 F.2d 1118, 1125 (10th Cir. 1979).

The other cases cited by the parties are distinguishable from this one. In *Doe v. Civiletti,* 635 F.2d 88 (2d Cir. 1980), the plaintiff sought reinstatement in the government's Witness Protection Program, authorized by Title V of the Organized Crime Control Act of 1970, Pub. L.No.91–452, §§ 501, 502, 84 Stat. 933, *reprinted in* 18 U.S.C. at p. 1327 (1976). There is, once again, some logic in providing anonymity when anonymity is closely connected to the statutory claim sought to be vindicated. While the government might have enrolled appellant in the Witness Protection Program here, it did not do so. The court in *Civiletti* also referred to the plaintiff's husband, who had also cooperated with the government, by pseudonym for "reasons of security." *Id.* at 90. The court did not elaborate, but the marital tie to the plaintiff under the circumstances of the case may have been sufficient reason. Without more, *Civiletti* should provide no aid to appellant.

In *United States v. Indian Boy X,* 565 F.2d 585 (9th Cir. 1977), *cert. denied,* 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978), this court did allow the appellant to use a pseudonym. However, the appellant was challenging his conviction for juvenile delinquency and the court grounded its decision to protect the identity of the juvenile in the "spirit of the Juvenile Delinquency Act." *Id.* at 587 n.4. No similar statutory policy favors the appellant's case here. Finally, *Doe v. State Bar,* 415 F.Supp. 308 (N.D.Cal.1976), *aff'd,* 582 F.2d 25 (9th Cir. 1978), was a suit to enjoin disciplinary proceedings against an attorney. The plaintiff was allowed to maintain his anonymity in state court proceedings before commencing his federal action. Although the district court used a pseudonym for plaintiff in its opinion, it expressed the "great disfavor" with which it viewed the practice and expressly declined to address the question in light of its disposition. *Id.* at 309 n.1.

None of these cases persuades me that we should extend to the appellant the shroud of anonymity that we would deny to the ordinary litigant in federal court.