Nolton *v.* Moses.

---

SAME TERM.　　*Before the same Justices.*

## NOLTON *vs.* MOSES.

The commentaries of the judge, at the circuit, upon the evidence, are not the subject of exceptions. If the circuit judge inadvertently misstates the facts, the counsel must correct him, at the time. If he gives an opinion upon the evidence, it cannot be reviewed upon a bill of exceptions.

It is proper for a circuit judge to apprize the jury as to the effect of their verdict upon the parties, in respect to the question of costs.

A circuit judge may, in his discretion, limit the number of witnesses to be examined on a collateral issue as to the character of the plaintiff, or that of either of the witnesses in the cause.

This discretion may be exercised either by laying down a rule, at the commence-

ment of the examination, limiting the number of witnesses to be called on each side, or by interposing and arresting the further examination, when, in the opinion of the judge, the inquiry as to character ought not to be pushed further.

If this discretion is exercised in such a manner as to work injustice to either of the parties, the remedy is by a motion for a new trial, on a case. The decision of the judge upon that point cannot be reviewed on a bill of exceptions.

THIS was an action for slander, tried at the Rensselaer circuit before PARKER, Circuit Judge. The alleged slander consisted in charging the plaintiff with being a thief. The defendant pleaded the general issue, and gave notice of justification. The uttering of the slanderous words was proved by James Powell and other witnesses. The defendant, after introducing several witnesses to prove his justification, examined Squire Allen for the purpose of impeaching the character of Powell, the plaintiff's principal witness. At the close of his examination the circuit judge remarked that a great deal of time was often unnecessarily and improperly occupied in calling a great number of witnesses to impeach and sustain the general character of a witness who had been examined, when the real character of the witness, so far as was necessary for the purpose of an impeachment, could be as well ascertained by examining a few witnesses properly selected for that purpose. He therefore would advise the parties, at the commencement of this kind of testimony, that he should only allow three witnesses on each side, to be examined as to the general character of a witness. The counsel for the defendant then stated they had some fifteen or twenty witnesses in attendance for the purpose of impeaching the witness James Powell, by showing his general character to be bad. But the circuit judge said that he should confine the parties to the number of three; and the defendant's counsel excepted. The defendant then called two other witnesses to impeach Powell, and the plaintiff examined three witnesses to sustain his testimony. The circuit judge charged the jury, among other things, that the evidence of Van Every, one of the plaintiff's witnesses, showed the speaking of actionable words, without the testimony of either of the other witnesses. That if the jury believed the testimony of

Nolton v. Moses.

Powell, who stood unimpeached, it would then become necessary for them to inquire whether the defendant had proved a justification. That in order to prove the defence contained in the notice, the defendant must produce sufficient evidence to warrant the jury in convicting the plaintiff of the crime of larceny, if he were upon trial before them on an indictment for that offence. That in reference to the amount of damages, the jury had a right to take into consideration the fact that the defendant had spread a justification of the slander upon the record; and if he failed to prove it, it should increase the damages to be given against him. That it was also proper for the court to instruct the jury with regard to the effect of their verdict upon the costs of the suit. That if the verdict should be less than fifty dollars, the plaintiff could recover no more costs than damages. That if he recovered fifty dollars, or over, he was entitled to recover his taxed costs; and if he recovered over $250, he would receive costs at the highest rate. The defendant's counsel excepted to the whole of the charge. In reply to a request of the defendant's counsel that the judge should charge the jury that they were the only judges of the amount of damages, and that they should give such damages as they thought proper, without respect to costs, his honor decided that the jury were the only judges of the damages, but that they had a right to take costs into consideration. To this decision the defendant's counsel also excepted; and the jury having rendered a verdict for the plaintiff for $350, the defendant, upon a bill of exceptions, moved for a new trial.

*Davis & Woodcock*, for the plaintiff.

*R. M. Townsend*, for the defendant.

*By the Court*, WILLARD, J. The verdict in this case, for 350 dollars, may be disproportionate to the injury inflicted by the defendant; but it was probably the result, in part, of the manner in which the defence was conducted. The justification was a decided failure; and no doubt the attempt to estab-

Nolton v. Moses.

lish it, after a lapse of 15 years from the time the alleged petit larcenies were committed upon the property of General Worthington, which though then known by him and the members of his family by whom they were proved, were suffered then to pass without rebuke—very properly led the jury to view the defence with disfavor.

The exceptions to the charge are too general. It has been repeatedly ruled that the judge's commentaries upon the evidence are not the subject of exceptions. If he inadvertently misstates the facts, the counsel must correct him at the time. If he gives an opinion upon the evidence, it cannot be reviewed upon exceptions. It is common experience to apprize the jury as to the effect of their verdict upon the parties, in respect to the question of costs ; and the practice has been expressly and repeatedly approved. (*Elliott* v. *Brown*, 2 *Wend.* 497.) The scope of the charge is right, and is not obnoxious to the criticisms made upon it.

The main point in the case is the objection of the defendant's counsel to the observation of the circuit judge as to the waste of time, occasioned by calling a great number of witnesses to impeach or to sustain the character of a witness in the cause. This observation was made while the defendant's counsel were examining witnesses to the character of James Powell, one of the plaintiff's witnesses ; and the judge concluded by limiting the number of witnesses to impeach or sustain the character of the witness assailed, to three witnesses on a side. This general observation of the judge was sound and correct ; but whether sound or not cannot be questioned by bill of exceptions. The circuit judge had no doubt a discretion with respect to the number of witnesses to be examined on this collateral question. The judge might, by the civil law, stop the multiplication of witnesses to the same matter. (*Cowen & Hill's Notes*, 396. *Wood's Civil Law*, 317. 2 *Dom. b.* 3, *title* 6, § 3, *art.* 14.) It has been the constant practice at the circuit in this state, on the collateral issue as to the character of the plaintiff, or that of any of the witnesses, either to lay down a rule in the commencement, limiting the number to

Nolton v. Moses.

be called on a side, as was done by the circuit judge in this case ; or to interpose and arrest the further examination, when, in the opinion of the judge, the inquiries as to character ought not to be pushed further. The latter course was adopted by Judge Gridley in *Bissell* v. *Cornell*, after the examination of 16 witnesses on a side, and the practice was approved by the supreme court. (*See* 24 *Wend.* 354.) And the chief justice remarked that the court had before held that the circuit judge must exercise a sound discretion as to the number of impeaching and supporting witnesses to be sworn. And he intimated that after some dozen of witnesses on a side had been sworn and examined, very little additional benefit would be derived from increasing the number. As early as the case of *Jackson* v. *Scott*, (6 *John. R.* 330,) in 1810, this court directed that witnesses' fees should not be taxed without an affidavit of the attendance of the witnesses and the amount of travel. And it has been many years required by statute that not only their attendance but *materiality* must be shown to the taxing officer, before they can be allowed for. (2 *R. S.* 651, § 8.) In *Irwin* v. *Deyo*, (2 *Wend.* 285,) forty witnesses attended in an action of slander, to support the plaintiff's character ; only two of whom were sworn. The taxing officer having allowed for the attendance of the whole, this court set aside the taxation, and directed that the fees for ten only should be taxed. These cases show that there must be a discretion in the court, to be exercised in some stage of the cause, as to the number of witnesses on these collateral issues. And in general, I think it will be found that the judge at the circuit can exercise it the most discreetly. My own practice for many years was, in cases of this kind, like that adopted by Judge Parker in this cause, with this exception. I generally suggested to the counsel that I should limit them to five or six witnesses on a side, unless something occurred in the course of the trial, to render a larger number necessary. Counsel may sometimes be taken by surprise, and have to meet, on the spur of the moment, and with witnesses selected at random, a studied and prepared impeachment. There may be cases when a wider range of examination than five or six

Nolton *v.* Moses.

witnesses on a side may be expedient and highly proper. I have never restricted the number in a capital case; and it should be done with care, in all cases. Should the judge adopt a rule, in this respect, that worked injustice to one of the parties, the remedy is by motion for a new trial, on a case. Being clearly a matter of discretion, it cannot be reviewed on bill of exceptions.

The limitation of impeaching and sustaining witnesses to three on a side in this case, looks, to a person unacquainted with such trials, like depriving the parties of a right. But the surrounding circumstances would enable the judge at the circuit, to perceive whether any benefit would result from an increase of the number. There is perhaps nothing in which a defendant in an action of slander is more likely to err, than in his judgment of the necessity of impeaching the character of the plaintiff, or of his principal witness. The pleasure he derives from hearing others assail a character which he has aspersed, blinds him to the consequences which often result from an indiscreet or needless attack. If the character of a witness or party is in truth bad, it can be shewn by a few witnesses as well as by many. If the character is shewn to be bad, from the transaction itself, as when he is an accomplice of a criminal, or when on cross-examination he exhibits himself to be a villain, general evidence of bad character will add nothing to it. There is perhaps no part of circuit experience in which so great abuse of what the law permits to be done for the discovery of truth, is exhibited, as in examinations to general character; and it would become intolerable were it not restrained by the presence and power of the presiding judge.

In the present case, I have no doubt the defendant suffered more from the attack he made upon the witness by general evidence, than from being restrained from repeating it. Be that as it may, we cannot interfere upon a bill of exceptions: and the motion for a new trial must be denied.