## WAFFLE *vs.* DILLENBECK.

In an action for assault and battery, the judge charged the jury as to the effect of their verdict on the question of costs, in case they should find for the plaintiff, and refused to charge them that in arriving at the amount of the verdict they would give the plaintiff, they had nothing to do with the question of costs, or whether or not their verdict would entitle him to full costs. *Held* correct.

THIS was an action for assault and battery, tried at the Otsego circuit in December, 1861, before Justice CAMPBELL and a jury.

Defenses: 1st. A general denial; 2d. *Son assault demesne;* 3d. Defense of the defendant's close. The undisputed facts were that the lands of the parties joined; the defendant's lying easterly of the plaintiff's. Some twenty years ago the plaintiff's land lying next to the defendant's was woodland, and the plaintiff refused to build any portion of the division fence between him and the defendant for that reason. The defendant therefore built the fence in question from 7 to 20 feet on his own land, so that the rails and fence would belong to him. Some eight or nine years ago the road had been so altered that the fence was just west of it, and of no use to the defendant, he having only a strip from one to three rods wide, west of the west bounds of the road. Since the alteration the plaintiff, in cutting off his timber, had occasionally fallen a tree across it, and by putting in new rails in the place of those thus broken, had, as he claimed, thus repaired the fence. On the morning of the affray the parties had some conversation about the plaintiff's cattle getting on to the defendant's land, when the plaintiff claimed the fence was not good, and the defendant told him he had heard enough about the fence and would move it away. He and his sons and hired man commenced doing so, when the plaintiff took two of his men and a cane and went over where the defendant and his men were at work, and used abusive and insulting language to the defendant. The evidence was con-

flicting as to whether the plaintiff first struck the defendant with the cane, or the defendant struck the plaintiff with his fist. The court charged the jury as to the rules of law by which they should be governed in determining whether their verdict should be for the plaintiff or for the defendant; and that if their verdict should be for the plaintiff, the amount of it was purely a question for their determination. The court further charged the jury that "a verdict for the plaintiff for less than $50 damages would not authorize the plaintiff to recover full costs; that a verdict for less than $50 damages would not entitle the plaintiff to recover against the defendant any more costs than damages; and a verdict for the plaintiff for $50 or more would entitle the plaintiff to recover all the legal costs and disbursements of prosecuting the action."

The defendant's counsel excepted to this portion of the charge as a whole, and also specifically to each proposition of it. The defendant's counsel requested the court to charge the jury " That in case they should find for the plaintiff, in arriving at the amount of the verdict they would give him, they had nothing to do with the question of costs, or whether or not their verdict would entitle him to full costs." The court declined so to do, and the defendant's counsel excepted. The jury rendered a verdict for the plaintiff for $50, and after judgment the defendant appealed.

*Countryman & Moak* for the appellant. I. This being a bill of exceptions, if there is any error, however slight, which *may have* influenced the jury, the defendant is entitled to a new trial. "The court will not, on *a bill of exceptions*, attempt to speculate as to its probable effect upon the conclusions of the jury." (6 *Duer,* 339.) The decisions are uniform, that if it *may possibly* have influenced the verdict, a new trial will be granted. (1 *Duer's R.* 430, 433. 6 *Hill,* 292, 296, *note b.* 19 *N. Y. Rep.* 299. · 18 *id.* 546.

Waffle *v.* Dillenbeck.

9 *Barb.* 619. 24 *Wend.* 420, 426, 427. 19 *id.* 232. 2 *Hall*, 40. 21 *Barb.* 489, 496, 497. 23 *id.* 554, 555. 1 *Hill*, 118.)

II. The defendant having built the fence, and it all lying on his own land, he was the owner of it, and entitled to draw it all away. When one puts his own rails into a fence, or builds a new one on the lands of another, the fence being a fixture, belongs to the owner of the soil, and the title to the rails is in him, so that he is not liable to an action by him who placed them there. (*Thayer* v. *Wright*, 4 *Denio*, 180. *Wentz* v. *Fincher*, 12 *Iredell*, *N. C.* 297. 1 *Hilliard on Torts*, 517, *note.*) The plaintiff should, therefore, have recovered nothing, as he had no right there, and was a trespasser.

III. The judge erred in his charge to the jury " That a verdict for the plaintiff for less than $50 damages would not authorize the plaintiff to recover full costs; that a verdict for less than $50 damages would not entitle the plaintiff to recover against the defendant any more costs than damages; and a verdict for the plaintiff for $50, or more, would entitle the plaintiff to recover all the legal costs and disbursements of prosecuting the action." Costs were not allowed by the common law, but are the creature of statute. They are an incident to the verdict, and are governed by it, and not the verdict by the costs. Anciently the rules in regard to damages were undefined, and their amount was left entirely to the jury; but the courts have recently been endeavoring to settle and define legal rules by which juries must be governed in estimating the legal damages which are the *legitimate* result of an injury. The courts have long been struggling to extricate themselves from *dicta* and errors, and to lay down precise rules of damages which are founded on sound reason. (*Sedg. Dam.* 203, *marg. p.*) It is one of the fundamental maxims of law that damages, in order to be the subject of recovery, must be the legal and *natural consequences of the act complained of.* (*Sedg. Dam.* 58, 584, *marg. page.*) How can it be said that

the bringing of a suit is, *in a legal sense*, one of the *proximate* consequences of an assault and battery ? The charge of the judge amounts to this: Had no suit been brought the damages may have been $25, but as the plaintiff has brought one, in order to indemnify him, *not for the injury*, but for bringing the action, you may give him $50, else his costs may be more than the recovery, and he would get nothing. The jury in this case gave just $50. Costs are no more a part of the verdict than any other consequence which may flow from it. It would be equally good law to charge the jury in such a case, that if the defendant should be defeated, and he should be unable to pay the judgment, he may be imprisoned on execution. So, in assault and battery, where the defendant had offered that the plaintiff might take judgment for $50, or any sum, it would be equally proper to charge the jury that unless the plaintiff recovered a greater sum he would have to pay the defendant's costs after the offer. So, in ejectment, that if the defendant should be defeated, the plaintiff may eject him and his family of little ones from the house, and cast them forth upon the mercies of the winds. No one would think of upholding a verdict on such charges ; and yet they are all but *consequences resulting from the verdict,* not the cause of action ; and have just as much principle to sustain them as the charge under consideration. "Distinctions which are not founded on a difference in the nature of things, are not entitled to indulgence ; they tend to make the science of law a collection of arbitrary rules, appealing to factitious reasons for their support ; consequently difficult to be acquired ; and often of uncertain application." (6 *Wend.* 116.) The true rule is and should be this: The circumstances under and manner in which the injury was inflicted, are proper matters for the jury, in estimating the plaintiff's damages, for they are circumstances surrounding the transaction and which characterize it. The right of the party to the damages which the law allows a jury to give for a particular injury,

is fixed before suit; the verdict of the jury is simply a *conclusive* determination of that right. How can an act (the bringing of a suit) subsequent to the injury, and after the right to the damages becomes fixed, change the rule of damages or their amount? If a resort to the ordinary legal remedies afforded by the court should be allowed to affect the amount of the verdict, why not in one case as well as another? Would not the question whether the plaintiff should have full costs or not, be a novel one, as the only question for discussion in the jury-room? The legislature, *as matter of public policy,* has provided, (*Code,* § 304, *sub.* 4,) that *in order to repress petty litigation,* unless the plaintiff's damages are $50 he shall not recover full costs. In extending the class of actions where the plaintiff should recover no more costs than damages, unless the recovery exceeded $50, the revisers wisely said : "It is hoped that by this provision, a temptation to, and, of course, a fruitful source of litigation, will be destroyed." (3 *R. S.* 2d *ed.* 795 § 6.) The law was designed to deter parties but little injured from coming into court and consuming its time by petty grievances; and is founded on the well known maxim, "*De minimis non curat lex.*" This is a matter of statute policy with which juries are not, and should not be allowed to interfere. Suppose a party to be injured to the extent of $25. Charge the jury that if he recover only that sum, it will really cost him more than the recovery, and, in order that he may lose nothing, they may give enough to carry costs ; and they reason that he ought to have his $25 clear of expense; and who can doubt that their verdict, as in this case, will be just enough to carry full costs? If such be the law, truly there will not be much risk in this class of actions hereafter. If he ought to have full costs when he recovers $25, change the law, but in order to indemnify him why mulct the defendant in $25 extra damages, which the plaintiff ought not to have, and are only given for the reason that it is necessary to do so that the plaintiff may recover full

costs.   It was asked at the circuit, " Do you object then to the jury being told what you admit the law to be ?"   To this we answer :   It is the duty of the judge to charge the jury as to the rules of law by which they are to be governed in determining the points necessarily and legally brought under their consideration ; but if he charge them on some point which does not *legitimately fall within their province,* even though he charge the law correctly, the judgment must be reversed, if the party excepting may have been injured by the charge.   The error is not in the principle of law, but in the instruction to the jury that it is proper matter for their deliberation.   (15 *N. Y. Rep.* 524.   12 *Barb.* 84, 94.   1 *Denio,* 583.   1 *Wend.* 510, 514.)   It by no means follows that . because a legal proposition is correct, the judge has a right to so charge the jury.   He has no such right unless it bears upon some question upon which the jury are required to pass.   So, it is said, it is presumed that every man knows the law, and consequently, that the jury knew it.   This presumption applies only to the effect of acts, so far as the parties to a transaction are concerned, and is founded on the principle that, as a matter of public policy, no one should be allowed to plead ignorance of the law as a shield from punishment or the consequences of his contracts.   It does not obtain in courts of justice ; else the charges by our judges are useless and unauthorized, and a judgment could never be reversed for error committed by the judge.   The judges declare the law, and the jury are bound by it as expounded to them.   They have to do with facts only.   (2 *Barb.* 568.) But suppose, for the sake of the argument, the presumption does obtain.   The presumption, if any, must be that their knowledge of the law was correct, and hence they knew that in their deliberations on the amount of the verdict they had nothing to do with the question of costs, and the judgment should be reversed because the judge misled them by an error in his charge.   " It is presumed that the jury follow the instructions of the court in matters of law, because it

was their duty so to do ; and, therefore, if the instruction was wrong the verdict was wrong." (2 *Barb.* 569. *Sedg. Dam.* 594, 600, *marg p.*) Thus much for principle. How stands · the question on authority ? The authority upon which most stress was laid at the circuit was, "Why, judges so charge juries every day." Granted. Courts are even now settling legal principles in accordance with "right reason." Instead of the fact it would have been much more satisfactory to have listened to some reason showing *why* they should so charge them ; and yet, for want of a better, even the court of appeals were compelled to listen to the same argument on a kindred question. (3 *Seld.* 193.) That court however reversed the common custom, and established the question on principle, saying, "*The custom at the circuit has been to admit evidence of this character;* but I have not been able to discover, *in the elementary writers* on evidence, authority for the practice." The custom arose after the publication of the case of *Elliott* v. *Brown,* (2 *Wend.* 497.) No prior case or authority for it can be found. The judge's charge in that case (*p.* 498) was directly contrary to that in this case. On error the judgment was reversed, on the ground that he who commits the first assault may recover if his adversary uses undue force, Savage, Ch. J. saying, (*p.* 500,) "But *without deciding* whether the refusal of the judge to state the law, relating to costs, to the jury was erroneous, I am of opinion that the judgment should be reversed on the first point." It is true that just previously, without citing any authority, or giving any reason why the law should be so, except, that "It is the duty of the jury to ascertain what damages the plaintiff has sustained ; and *also how much the defendant ought to be punished.* The court had stated that the judge's direction to the jury in reference to the amount of their verdict was strictly correct. Ch. J. Savage "*seems*" to be of opinion (and so the reporter gives it) that the judge might have charged as requested. The first sentence given above is undoubtedly correct, but

the second is directly contrary to the decision of the court of appeals in *Dain* v. *Wycoff*, (3 *Seld.* 193,) where the court says, "There can be no reason why twelve men, wholly irresponsible, should be allowed to go beyond the issue between the parties litigating, and, after indemnifying the plaintiff for the injury sustained by him, proceed, as conservators of the public morals, *to punish the defendant in a private action.*" Although the reason given by Ch. J. Savage has been exploded, judges with only now and then a challenge from the bar, have so charged juries every day since. Reason is the soul of the law, and when the reason of a rule ceases the rule itself ceases. After diligent search of the reports and elementary works, we have been unable to find either a case or elementary authority outside of this state, which sanctions such a doctrine; and the only subsequent case here is founded upon that *dictum,* without any attempt to reason upon the question, or arrive at any principle, or any other authority to sustain it. The reason on which the *dictum* was founded having been disapproved by the court of appeals, this court should promptly correct so common an error. (27 *Barb.* 147, 148.) Where a decision may have been acted upon, and the title to real property depend upon it, or parties undoubtedly framed their contract upon it, the rule of *stare decisis* is one of much force, but it has never had any weight when it is contrary to every principle of law, and only the rights of the parties litigant in the particular case are dependent upon it. (1 *Comst.* 255. 17 *N. Y. Rep.* 543. 2 *Barb.* 288. 9 *id.* 543. 13 *id.* 359.) It has well been said, "It has come to pass that *precedent* in its ancient and technical power is hardly known to the courts at all, and that "a case"—once so much sought for, so deferentially listened to, and so scrupulously followed—is now much less inquired after than "*a principle*" and "*a reason.*" But even in our own state, *Elliott* v. *Brown* has not passed unscathed. It was shaken, and substantially overthrown, in *Hicks* v. *Foster*, (13 *Barb.* 663,) the court saying (*p.* 666,)

"If, *however, the plaintiff can sustain the principle put forth in that case, that the jury may take into consideration the expenses to which the plaintiff has been put in prosecuting his suit, and they act upon the principle,* (as I maintain they must, *if it is sound,*) then there will be no risk in this class of actions hereafter." The reasoning and principles of the following cases necessarily overthrow the *dictum* in *Elliot* v. *Brown.* (*Hicks* v. *Foster,* 13 *Barb.* 663. *Dain* vs. *Wycoff,* 3 *Seld.* 191. 18 *N. Y. Rep.* 47. *Myers* v. *Malcom,* 6 *Hill,* 292, 296. *Palmer* v. *Haskins,* 28 *Barb.* 91.)

IV. In any event, if the charge of the judge, in regard to costs, was strictly correct, he erred in refusing to charge the jury as requested by the defendant's counsel, "That in case they should find for the plaintiff, in arriving at the amount of the verdict they would give him, they had nothing to do with the question of costs, or whether or not their verdict would entitle him to full costs." It is the duty of the judge, when requested, to charge a proposition applicable to the case, if correctly put, and especially so where his charge may have erroneously misled the jury into the belief that a certain question was a proper one for their consideration. (4 *Hill,* 271. 1 *Seld.* 95, 106. 11 *Wend.* 83. 2 *Seld.* 388.)

*DeWitt C. Bates,* for the respondent. The learned justice who tried the cause, not only charged the jury upon this question in accordance with the practice of every judge in the state, but is fully sustained by authority. In the case of *Nolton* v. *Moses,* (3 *Barb. S. C. Rep.* 31,) decided by Justice Willard at general term, it is held that "It is proper for a circuit judge to apprise the jury as to the effect of their verdict upon the parties, in respect to the question of costs." Justice Willard in his opinion, on page 34, says, "It is common experience to apprise the jury as to the effect of their verdict upon the parties, in respect to the question of costs; and the practice has been expressly and repeatedly approved;"

and he cites *Elliott* v. *Brown*, (2 *Wend.* 49.)   In the case of *Elliott* v. *Brown*, which was an action for *assault and battery*, Ch. J. Savage, who delivered the opinion of the court, on page 500 says, "It is the duty of the jury to ascertain what damages the plaintiff has sustained, and also how much the defendant ought to be punished; and if the jury consider the costs as a part of the amount which the defendant should pay, and wish to give no greater damages than barely enough to carry costs, or to give such a sum as will not carry costs, they have a right so to do." The charge of Justice Campbell was, therefore, fully sustained by practice and authority, and the judgment should be affirmed, with costs.

*By the Court,* CAMPBELL, J.  This was an action of assault and battery, tried before me at the circuit. Among other things I charged the jury that a verdict for the plaintiff for less than $50 damages would not carry full costs, but would entitle the plaintiff to an amount of costs equal to the amount of damages; and that a verdict for fifty dollars or more would entitle the plaintiff to his full costs; and I refused to charge that in arriving at the amount of their verdict they had nothing to do with the question of costs. The charge and refusal to charge were duly excepted to by the defendant's counsel, and these exceptions raise the only question in the case.   Until this time I had supposed that there was no difference of opinion on the points raised; and the practice at the circuit of instructing the jury as to the effect of their verdict in actions of torts, especially in actions of slander, libel and assault and battery, was at least general if not entirely uniform—when the judge was requested so to charge; and further, that such instructions were very often given to the jury when not requested, where it might seem to the judge that the ends of justice required it.   Statutes limiting the costs for the purpose of preventing trifling and malicious actions were passed in the reigns of Elizabeth, James First and Charles Second.   The principal statute was passed in the

reign of Charles Second; and it enacted that " In all actions of *trespass, assault and battery* and other *personal actions,* wherein the judge at the trial of the cause shall not find and certify under his hand upon the back of the record that an assault and battery were sufficiently proved by the plaintiff against the defendant, or that the freehold or title of the land mentioned in the plaintiff's declaration was chiefly in question, the plaintiff, in case the jury shall find the damages to be under the value of forty shillings, shall not recover or obtain more costs of suit than the damages so found shall amount unto." In cases of assault and battery and trespass the certificate of the judge would regulate the costs; in all other *personal* actions the verdict alone regulated them. Our statute, with which we have to do in the present case, was formerly as follows: " If the plaintiff in an action for assault and battery or false imprisonment, or for slanderous words or for libel, brought in the supreme court, recover fifty dollars or less, such plaintiff shall recover no more costs than damages." (2 *R. S.* 613, § 6.) The revisers in their notes say that by this provision it was hoped a fruitful source of litigation might be destroyed. The code (§ 304) enlarges this class, adding other personal actions and granting full costs when the plaintiff recovers fifty dollars or over. Most of the actions enumerated and which have in all time formed an element of litigation, are the fruits of the worst passions of our nature. They are the children of anger, malice, revenge, and " all uncharitableness." Hence in most cases the jury have been authorized to render verdicts which may not only compensate the plaintiff for his damages sustained, but also may add thereto what is sometimes termed smart money, sometimes exemplary and sometimes punitive damages. In an early and important case in this state, and which attracted much attention at the time from the character of the parties, that of *Tillotson* v. *Cheetham,* (3 *John.* 56,) Chief Justice Kent told the jury that he did not accede to the doctrine that the jury ought not to *punish* the defendant in a civil

suit, for the pernicious effect which a publication of this kind was calculated to produce in society." On a motion made to set aside the inquisition, Elisha Williams contended that "In a private action, the party can recover only for the private wrong; he has no concern with the public offense, for which the defendant must atone on an indictment." But the chief justice, again speaking for the court, said, "It is too well settled in practice and is too valuable in principle to be called in question." For more than half a century that has been settled law in this state, although from time to time efforts have been made to alter the rule, especially as to those offenses where the party is liable both to a civil action and to indictment. Where, therefore, in an action for slander, libel or assault and battery, the jury know or are told that they may give exemplary or punitive damages, it is of vital importance that they should be informed as to the effect of their verdict on the question of costs. The jury not only render the verdict of guilty or not guilty in these *quasi* criminal actions, but they also pronounce the sentence, in the same breath. In a very large proportion of these actions the question of costs is the most important question in the case, and no one who has had experience on the bench can have failed to see that a full knowledge by the jury on this point is often absolutely necessary in order to enable them to render what they consider a full measure of justice to the parties. Thus in *Elliott* v. *Brown*, (2 *Wend.* 497,) the jury requested instruction as to what amount of damages would carry costs. The instruction was not given. When the case came up to the supreme court from the New York common pleas, where it was tried, Chief Justice Savage said: "It is the duty of the jury to ascertain what damages the plaintiff has sustained, *and also how much the defendant ought to be punished;* and if the jury consider the costs as part of the amount which the defendant should pay, and wish to give no greater damages than barely enough to carry costs, or to give such a sum as will not carry costs, they have a right to

Waffle *v.* Dillenbeck.

do so. I think, therefore, it would have been proper to have given the jury the information they wanted." That was an action for assault and battery. In *Nolton* v. *Moses,* (3 *Barb.* 31,) Mr. Justice Willard, who had a large experience as a circuit judge before he came on the bench under the new constitution, says: "It is common experience to apprise the jury as to the effect of their verdict upon the parties in respect to the question of costs; and the practice has been expressly and repeatedly affirmed." The decision in *Hicks* v. *Foster,* (13 *Barb.* 663,) in no way conflicts with the ruling in the case before us. In that case the judge at the circuit instructed the jury "that they had a right to take into consideration the fact that the plaintiff had been compelled to come into court in order to vindicate her character." The law regulating costs and the question of punitive damages were not alluded to. The instruction was understood to mean that the jury might award to the plaintiff the damages which she had sustained by reason of the slander, and in addition might give compensation for all the expenses, costs and counsel fees consequent on coming into court. There was no attempt to call in question the rule, in *Elliott* v. *Brown.* Mr. Justice Marvin giving the opinion of the court says correctly, "*Elliott* v. *Brown,* however, has no application to the question we are considering." I think the ruling at the circuit was right, both on principle and authority. The judgment must be affirmed.

Judgment accordingly.

[BROOME GENERAL TERM, January 27, 1863. *Parker, Campbell* and *Mason,* Justices.]