85 F.3d 635
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
JOHN DOE I, Jane Doe, and John Doe II[1],
Plaintiffs-Appellants,
v.
Richard BURTON, Commissioner, Alaska department of Public
Safety; Bruce M. Botelho, Alaska Attorney
General, Defendants-Appellants.
 No. 94-35734.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 7, 1995.
Decided May 13, 1996.
 
 Before: HALL, WIGGINS, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Alaska enacted a sex offender registration act in 1994. John Doe, who is subject to the requirements of the Act due to a previous conviction for a sex offense, and his wife Jane Rowe, along with John Doe II, who is also subject to the terms of the Act, filed suit in district court seeking an injunction prohibiting enforcement of the Act. Their complaint names the Commissioner of the Alaska Department of Public Safety and the Attorney General for the State of Alaska (collectively "the state"). It alleges violations of the United States and Alaska constitutions.
 
 
 3
 The plaintiffs moved for a preliminary injunction and for leave to proceed under pseudonyms. The district court granted the motion for preliminary injunction in part, but denied the motion for leave to proceed under pseudonyms, ordering the plaintiffs to file a new complaint under their true names or have their case dismissed.
 
 
 4
 The plaintiffs filed an emergency appeal in this Court. A motions panel stayed pending appeal that portion of the district court order that denied leave to proceed under pseudonyms and threatened dismissal. This panel now has before it an appeal from the denial of the motion for leave to proceed under pseudonyms.
 
 
 5
 The district court had jurisdiction under 28 U.S.C. § 1343. Appellants claim that this Court has jurisdiction over the interlocutory appeal because the order denying leave to proceed under pseudonyms fits within the collateral order exception to the final decision rule of 28 U.S.C. § 1291.
 
 I.
 
 6
 The appellants argue that this Court has jurisdiction over the interlocutory appeal under the "collateral order exception" recognized in Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949). This Court has noted that an interlocutory order must meet three conditions to fit within the exception:
 
 
 7
 The order (1) must conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.
 
 
 8
 Kuster v. Block, 773 F.2d 1048, 1049 (9th Cir.1985).
 
 
 9
 The parties dispute whether the district court's order meets the second condition. Specifically, the state argues that the pseudonym issue is neither "important" nor "completely separate from the merits of the action." Although we disagree that the issue is not "important," we agree that it is not "completely separate from the merits of the action." Because our conclusion that the issue is not separate by itself precludes our assertion of jurisdiction, we limit our discussion to the issue of separability. See Marchetti v. Bitterwolf, 968 F.2d 963, 965 (9th Cir.1992).
 
 
 10
 The plaintiffs argue that the pseudonym issue is "separate from the overall merits as to the constitutionality" of the registration act. The state responds that a "significant portion of the plaintiffs' case against the sex offender registration act revolves around their claim that the act violates their ... right to privacy.... But it is upon this same asserted right to privacy that plaintiffs base their motion to use pseudonyms." We think that the state is clearly correct.
 
 
 11
 Among the grounds on which the plaintiffs challenge the act is that it allegedly violates their implied federal right to privacy and the express state constitutional right to privacy. Central to a determination of these issues will be whether the plaintiffs in fact enjoy a legitimate expectation of privacy regarding their convictions. See Doe v. City of New York, 15 F.3d 264, 268 (2d Cir.1994) ("Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record."); see also Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 493-96 (1975).
 
 
 12
 Similarly, whether the district court should allow a litigant to proceed under a fictitious name depends largely on whether the litigant has a sufficient privacy interest in the information that would be revealed in order to justify an exemption from the normal rule that parties must litigate under their own names. See, e.g., James v. Jacobson, 6 F.3d 233, 238 (4th Cir.1993) ("privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this rare dispensation").
 
 
 13
 Thus, both the pseudonym issue and the privacy claims turn on whether the plaintiffs have a legitimate expectation of privacy in matters that are a part of the public record. The pseudonym issue "cannot be assessed fairly until the substance of both [the plaintiffs'] case and that of the defendant become known." Kuster, 773 F.2d at 1049.
 
 
 14
 This conclusion is not an easy one, for it forces the plaintiffs to suffer exactly the harm they seek to avoid by challenging the law. As they themselves assert,
 
 
 15
 The complaint seeks protection from the punitive nature of the [registration act], including its public disclosure provisions. Appellants should not be denied that protection and suffer public disclosure at the outset merely because they chose to challenge the constitutionality of the [registration act].
 
 
 16
 Unfortunately, however, it is the conclusion the caselaw prescribes. The fact that the plaintiffs seek the same protection in their motion for leave to proceed under pseudonyms as they do in their underlying complaint underscores that the issues are not in fact separate.[2]
 
 
 17
 Two other courts of appeals, however, have decided that an order denying leave to proceed under pseudonym is immediately appealable under the collateral order doctrine: James v. Jacobson, 6 F.3d 233 (4th Cir.1993); Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707 (5th Cir.1979); Doe v. Stegall, 653 F.2d 180 (5th Cir.1981).
 
 
 18
 In none of these cases, however, was the pseudonym issue intertwined with the underlying claim as it is here. In James, the plaintiffs brought a malpractice action and claimed economic injuries. The "rights" they sought to protect in the underlying action and in their effort to proceed anonymously were therefore distinct. Likewise, in Southern Methodist, the plaintiffs' underlying claim sought to redress injuries from employment discrimination rather than the shame or opprobrium the plaintiffs sought to avoid by proceeding under pseudonyms. Finally, Stegall was an establishment clause challenge to school sponsored prayers; the plaintiff's desire to avoid community harassment by proceeding anonymously was a different interest than the First Amendment interest that the plaintiffs sought to protect in the underlying claim.
 
 
 19
 We therefore conclude that none of these cases is helpful to the plaintiffs in this case. We dismiss this interlocutory appeal because the issue presented is not separate from the merits of the plaintiffs' claims.
 
 II.
 
 20
 Because we lack jurisdiction to review the district court's denial of the motion for leave to proceed under pseudonyms, we express no opinion as to whether the district court abused its discretion in doing so.
 
 III.
 
 21
 For all the foregoing reasons, this appeal is DISMISSED.
 
 WIGGINS, Circuit Judge, dissenting:
 
 22
 I dissent. I believe that the majority misinterprets the "separate" requirement of the collateral order doctrine and therefore errs in holding that we have no jurisdiction to review the order denying Appellants leave to proceed under pseudonyms. In addition, in reaching the merits of the appeal, I would hold that the district court abused its discretion in denying Appellants leave to proceed anonymously.
 
 I.
 
 23
 At issue here is the proper interpretation of Cohen 's "separateness" prong. As discussed by the majority, under 28 U.S.C. § 1291, only "final decisions" of the district court can be reviewed on appeal. Under the collateral order doctrine, certain orders that do not end the litigation on the merits are appealable on an interlocutory basis. See Digital Equipment Corp. v. Desktop Direct, Inc., 114 S.Ct. 1992, 1995 (1994). In order to be immediately appealable, the order must "(1) conclusively determine the disputed issue, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." Kuster v. Block, 773 F.2d 1048, 1049 (9th Cir.1985) (discussing Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949)); see also Orange County v. Hongkong and Shanghai Banking Corp. Ltd., 52 F.3d 821, 823 (9th Cir.1995) (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978)).
 
 
 24
 The majority concludes that the district court's order denying Appellants' motion to proceed under pseudonyms does not decide an issue "completely separate from the merits of the action" because the pseudonym issue raises privacy-based arguments similar to those raised in the underlying challenge to the statute. For the following reasons, I believe the majority misinterprets the "separate" requirement of the collateral order doctrine.
 
 A.
 
 25
 The separateness prong of Cohen requires that an appealable interlocutory order must be "separate" in that it should not merely be a "step toward final disposition of the merits of the case and will not be merged in final judgment." Cohen, 337 U.S. at 546; see also Jackson v. Vasquez, 1 F.3d 885, 888 (9th Cir.1993) (transportation order is not a "mere step toward final disposition" of potential habeas petitioner's claims). Thus, the "matters embraced in the decision appealed from [should not be] of such an interlocutory nature as to affect, or to be affected by decision of the merits of th[e] case." Cohen, 337 U.S. at 546.
 
 
 26
 As we have explained, "[t]he 'completely separate from the merits' requirement is merely a distillation of the principle that there should not be piecemeal review of 'steps toward final judgment in which they will merge.' " Garamendi v. Allstate Ins. Co., 47 F.3d 350, 353 (9th Cir.), cert. granted, 116 S.Ct. 334 (1995) (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 n. 13 (1983)) (holding that remand order based on Burford abstention is appealable under collateral order doctrine). In other words, the order must be "conceptually distinct" from the merits of the underlying claims. See Mitchell v. Forsyth, 472 U.S. 511, 527 (1985) (holding that a "claim of qualified immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated").
 
 
 27
 Consequently, both this court and the Supreme Court have found many orders to be "separate," and thus appealable under the collateral order doctrine, even though the appealable order requires some consideration of issues or facts that also arise in considering the merits of the case. See, e.g., Abney v. United States, 431 U.S. 651, 659 (1977) (nature of double jeopardy claim is separable from issue of accused's guilt); Mitchell, 472 U.S. at 527 ("claim of qualified immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated").[1]
 
 
 28
 For example, in Mitchell v. Forsyth, the Supreme Court held that an order denying a claim of qualified immunity (either at summary judgment or at the dismissal stage) involved a claim of right "separable from, and collateral to, the rights asserted in the action." Mitchell, 472 U.S. at 527. In discussing the requirement of complete separateness, the Court explained:
 
 
 29
 [I]t follows from the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct that a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated ... An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions ... To be sure, the resolution of these legal issues will entail consideration of the factual allegations that make up the plaintiff's claim for relief; the same is true, however, when a court must consider whether a prosecution is barred by a claim of former jeopardy or whether a Congressman is absolutely immune from suit because the complained of conduct falls within the protections of the Speech and Debate Clause.
 
 Id. at 528 (emphasis added).[2]
 
 30
 Thus, consideration of some aspect of the merits of the underlying case does not require that we find that the issues in the interlocutory appeal are not separable. Rather, as stated in Mitchell, an order is separable from the merits of the underlying case when it is "conceptually distinct" and thus will not "affect" the merits determination as prohibited by Cohen.[3]
 
 B.
 
 31
 Given the above discussion, I now address whether the order denying Appellants leave to proceed anonymously presents issue that are "conceptually distinct" from the Appellants' underlying claims. To begin, the majority acknowledges that two circuits have held that an order denying a motion to proceed under pseudonyms presents issues that are separate from the merits of the case.[4] Nevertheless, the majority concludes that the decision to grant or deny the Appellants' motion to proceed under pseudonyms becomes a "step toward final disposition of the merits of the case" because the Appellants' underlying challenge to the registration statute raises privacy-based arguments that are similar to one of the factors employed in deciding the pseudonym issue. I disagree.
 
 
 32
 Here, the district court did not need to make any decision concerning the merits of the case in order to decide whether Appellants should proceed under pseudonyms. The test courts use to decide a pseudonym motion considers the risk of retaliation or physical harm resulting from disclosure; the "private" or "sensitive" nature of the information disclosed; the ages of the persons whose interests are sought to be protected; whether the suit is brought against a governmental or private party; the risk of unfairness to the opposing party from allowing the use of pseudonyms; and the need to protect a person from harassment, injury, ridicule or personal embarrassment. See, e.g., James, 6 F.3d at 238-39; Doe v. Stegall, 653 F.2d at 183; Wynne & Jaffe, 599 F.2d at 711-12; see also Doe v. Frank, 951 F.2d 320, 323 (11th Cir.1992); United States v. Doe, 655 F.2d 920, 922 (9th Cir.1980) (granting request to publish opinion with criminal defendant referred to by pseudonym).
 
 
 33
 The majority finds that the determination of one of these factors--whether the information disclosed is private or sensitive--is too intertwined with the merits of Appellants' challenge to the registration statute as violating their constitutional privacy rights, thus rendering the decision whether to grant leave to proceed anonymously not "separate" from the merits. I would hold otherwise.
 
 
 34
 In determining whether the information that would be disclosed in the litigation is private or sensitive, the court need only determine that the information is protected by a common law privacy right or is "sensitive" in that the disclosure would subject Appellants to social stigma.[5] This inquiry is very different from a determination of whether the required registration and dissemination of the same information violate Appellants' constitutional privacy rights. Thus, the pseudonym determination (utilizing the above factors) is no less separable from the merits of the underlying challenge to the registration statute than a double jeopardy claim is separable from the merits of the underlying criminal prosecution or a claim of qualified immunity is "conceptually distinct" from the underlying issue of whether a state official violated the plaintiff's civil rights. See Abney, 431 U.S. at 659 (nature of double jeopardy claim is separable from issue of accused's guilt); Mitchell, 472 U.S. at 528.
 
 
 35
 In sum, I believe that the issues determined in denying Appellants' motion to proceed under pseudonyms are separable from the merits of Appellants' underlying challenge to the registration statute and would hold that we have jurisdiction to review the district court's decision.[6]
 
 II.
 A.
 
 36
 Turning to the merits, we have yet to adopt a standard for granting parties leave to proceed under pseudonyms. I would hold that, in considering a motion to proceed under pseudonyms, the district court should begin with the recognition that such a motion is only granted in "unusual" cases. As noted by the Fifth Circuit, Federal Rule of Civil Procedure 10(a) requires plaintiffs to disclose their names in their complaint. Fed.R.Civ.P. 10(a). Moreover "public access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." Doe v. Stegall, 653 F.2d at 185 (citation omitted).
 
 
 37
 On the other hand, as the Stegall court also noted, "party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." Id. The district court therefore must balance the plaintiff's asserted need to proceed anonymously against the "procedural custom fraught with constitutional overtones". Id. This balancing requires the district court to consider those factors or characteristics common to the unusual cases in which the need for party anonymity overcomes the presumption of the Federal Rules and procedural custom. Id.
 
 
 38
 No one case, however, purports to set forth all of the factors that the district court should consider in making this determination. I agree with Stegall that "it would be a mistake to distill a rigid, three-step test for the propriety of party anonymity" from the holding of any case. Id. Instead, the district court should look to the factors discussed above and determine whether one factor, several factors, or all the factors together outweigh the presumption that parties must proceed under their true names.
 
 B.
 
 39
 The circuits that have reviewed the denial of a motion to proceed under pseudonyms have held that the decision whether to allow plaintiffs to use pseudonyms is committed to the district court's discretion. See, e.g., James, 6 F.3d at 238; Frank, 952 F.2d at 324; Stegall, 653 F.2d at 184. I would adopt that standard as well, and accordingly review the district court's decision here for abuse of discretion.
 
 C.
 
 40
 I believe that the district court abused its discretion in denying Appellants leave to use pseudonyms for several reasons. First, an overarching problem with the district court's order is that the court analyzed each factor separately, finding that each factor alone would not permit the appellants to proceed under pseudonyms. See, e.g., E.R. 76 (fact that plaintiffs do challenge governmental action not controlling), 77 (public nature of convictions is fatal to claims of social stigma). The court failed to assess whether, under all of the circumstances in this case, the factors which favored permitting Appellants to proceed anonymously overcame the presumption in favor of identifying the true parties.
 
 
 41
 Second, I believe the district court incorrectly applied several of the factors it considered, ignored several others, and thus utilized a far stricter standard for permitting the pseudonym filing than that articulated above. The most glaring example of this problem is that the district court failed to give appropriate weight to the fact that Appellants will suffer the harm they seek to avoid if not permitted to proceed under pseudonyms. Although the district court noted that other courts have allowed the use of pseudonyms if the plaintiffs would otherwise incur the very injury they seek to avoid in the underlying case, E.R. 78 (citing Roe v. Ingraham, 364 F.Supp. 536, 541 n. 7 (S.D.N.Y.1973)), the court concluded that disclosure of Appellants' names in this case would not vitiate the purpose of their lawsuit because the law they challenge requires registration for 15 years. E.R. 79.
 
 
 42
 It may be true that disclosure of Appellants' names would not render future relief entirely moot, but it would render such future relief largely moot, and it would invite much of the harm the underlying action seeks to prevent. Identification of Appellants will publicize their status; it will notify at least some members of the community of other information such as Appellants' place of residence, place of employment, and family members; and it will thus increase the risk of stigmatizing or retaliatory action against appellants and others who are close to appellants. Most importantly, here, where the district court granted a preliminary injunction prohibiting the public dissemination of the information required by the registration statute due to the harm Appellants would suffer, this factor weighs heavily in favor of permitting appellants to proceed anonymously. The district court failed to explain why the dissemination of the information required by the registration statute would irreparably harm the Appellants, but dissemination of that same information through denial of leave to proceed anonymously would not.
 
 
 43
 A further example of the district court's misapplication of the factors weighing in favor of permitting pseudonym filing is the district court's conclusion that the information that would be disclosed in litigation was already a part of the public record and therefore not constitutionally protected "private" information. E.R. 76-77 (finding the fact that the convictions were a matter of public record "fatal" to appellants' claim that they would be stigmatized by their participation in the lawsuit). Nothing in the case law, however, suggests that the "private" information must be constitutionally protected in order to warrant granting leave to proceed anonymously. To the contrary, courts have permitted anonymous filings where the information involves a wide range of subject matter--from abortion (which is protected by a constitutional right to privacy) to illegitimacy (which is not).[7]
 
 
 44
 Moreover, the Supreme Court has noted in a different context that information contained in a public record--such as criminal convictions--can be protected by a common law right to privacy, even though it may not be constitutionally protected. See United States Dept. of Justice v. Reporters Comm., 489 U.S. 749, 762-764 & n. 13 (1989) (rejecting "cramped notion of personal privacy" in FOIA context and holding that rap sheet is protected by common law right to privacy that encompasses an individual's right to control information concerning his or her person even though that information is contained in a public record).[8] The common law right to privacy is broad enough to protect information that, although once public, is no longer easily accessible--precisely the situation here. See id. at 762-64.[9]
 
 
 45
 Additionally, the district court failed to recognize that courts permit plaintiffs to proceed anonymously not solely because certain information is "private," but also because the information will subject the plaintiffs to social stigmatization. See Doe v. Blue Cross & Blue Shield of Rhode Island, 794 F.Supp. 72, 74 (D.R.I.1992) (" '[C]ommon thread running through these cases is the presence of some social stigma or the threat of physical harm to the plaintiffs attaching to disclosure of their identities to the public record.' ") (citation omitted). The district court erroneously discounted the social stigma that would attach both from the publicity of the Appellants' former convictions and from the fact that the Appellants are bringing the challenge to the registration statute; the court focused solely upon whether the convictions were already public record and therefore constitutionally protected from disclosure.[10]
 
 
 46
 Thus, although Appellants may have a diminished privacy interest in their 15-year old convictions, I believe the district court erred in failing to consider whether Appellants have any common law privacy interest in the dissemination of information concerning their 15 year old convictions or whether the information is sufficiently "sensitive" to warrant granting leave to proceed anonymously.
 
 
 47
 An additional factor that I believe the lower court misapplied is the assessment of the danger of retaliation against the litigants or others if their real names are used. See, e.g., James, 6 F.3d at 238-39. Here, the district court concluded that the Appellants did not face much risk of retaliation or ostracism, noting that it "would be inclined to look more favorably upon the request [to use pseudonyms] if plaintiffs had presented facts from which it could be more reasonably concluded that plaintiffs face a serious risk of bodily harm." E.R. 77 (emphasis added).
 
 
 48
 First, I do not believe that Appellants are (or should be) required to show that they face "a serious risk of bodily harm," as the district court apparently held. See, e.g., James, 6 F.3d 233 (party artificially inseminated with physician's sperm permitted to proceed anonymously); Blue Cross & Blue Shield, 794 F.Supp. at 73-75 (public stigmatization from identification as transsexual sufficient to override any public interest in identity disclosure). Instead, Appellants are required to show that they would be subjected to "harassment, injury, ridicule or personal embarrassment" if their identities are revealed. See U.S. v. Doe, 655 F.2d at 922.
 
 
 49
 Second, Appellants did describe harassment they have faced and provided descriptions of actual violence against other convicted sex offenders. In this case, the nature of two of the Appellants' crimes (sex offenses) makes retaliation likely. See Appellants' Br. at 5-6 (describing violent incidents against sex offenders, their families, and property); E.R. 13-15 (describing harassment "John Doe I" faced when his prior conviction became known).[11] Although it is true that the two Appellants' prior convictions are already matters of public record, use of their names in this litigation will make that information much more widely available and highly publicized within Appellants' current communities. Moreover, Appellants may face a risk of retaliation due to their status as plaintiffs in the litigation, not simply due to their status as previously convicted sex offenders.[12] Furthermore, the district court's grant of a preliminary injunction against public dissemination of the information required by the registration statute severely undercuts its findings regarding the likelihood of retaliation.
 
 
 50
 Lastly, the district court failed to give appropriate weight to the following two factors: (1) the Appellants are challenging governmental action and (2) there appears to be little or no harm to the Appellees in permitting the Appellants to proceed under pseudonyms. The district court recognized that the fact that Appellants are challenging governmental action weighs in favor of granting the pseudonym motion, E.R. 76, and found that factor was not determinative. It appears, however, that the district court neglected to actually weigh this factor when determining whether all of the circumstances warranted the pseudonym filing.
 
 
 51
 Correspondingly, the district court did not consider whether the government would be harmed by Appellants proceeding anonymously. See James, 6 F.3d at 240; Doe v. United Servs. Life Ins. Co., 123 F.R.D. 437, 439 (S.D.N.Y.1988). Here, the Appellees know the identities of the Appellants and have been given relevant information pertaining to the Appellants in sealed affidavits. The Appellees will not be disadvantaged by the pseudonym filing because they know the Appellants' true identities and will have full discovery rights throughout the case. As noted in United Servs. Ins. Co., the Appellees "will only be barred from using or disclosing the fruits of its discovery for purposes other than the defense of this action." United Servs. Ins. Co., 123 F.R.D. at 439; cf. Doe v. Hallock, 119 F.R.D. 640, 644 (D.Miss.1987) (finding private defendant's reputation could be harmed in Title VII action and thus basic fairness required disclosure of plaintiff's identity).
 
 
 52
 In sum, the district court's misapplication of several factors which favored granting Appellants' motion to proceed under pseudonyms coupled with its failure to consider all the factors together in determining whether to grant the motion, compel me to conclude that the court abused its discretion in denying the Appellants leave to proceed anonymously.
 
 III.
 
 53
 For the foregoing reasons, I would hold that denial of Appellants' motion to proceed anonymously is reviewable and REVERSE the district court's denial of the motion to proceed anonymously. Accordingly, I dissent.
 
 
 
 [1]
 The plaintiffs in this case previously were denominated "James Rowe, Jane Rowe and John Doe." One of the many persons genuinely named "James Rowe" wrote to the court while the appeal was pending, and said that his reputation was harmed by a newspaper story about the appeal, because careless readers might think erroneously that he is a convicted sex offender. Thus, we have changed the caption to the conventional and traditional designations of pseudonyms, John Doe and Jane Doe (Richard Roe and Jane Roe when necessary to distinguish defendants from plaintiffs). The names in this caption are fictional. It is preferable for lawyers and courts to avoid harm to the reputations of real persons by using these traditional references for pseudonyms
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [2]
 By contrast, a typical example of an issue that is separate from the merits is the imposition of sanctions on a nonparty. See, e.g., Estate of Bishop v. Bechtel Power Corp., 905 F.2d 1272, 1275 (9th Cir.1990)
 
 
 [1]
 See also Marchetti v. Bitterolf, 968 F.2d 963 (9th Cir.1992) (holding that a district court order granting a stay of a prisoner's civil rights action pending exhaustion of his habeas remedies was reviewable as a collateral order); Pelletier v. Federal Home Loan Bank of San Francisco, 968 F.2d 865, 873-74 (9th Cir.1992) (holding that the denial of a motion to substitute the federal government as the defendant in place of employee was reviewable under Cohen, because scope of employment inquiry was separable from the question of whether the challenged conduct would give rise to liability in tort)
 
 
 [2]
 Similarly, in Marchetti v. Bitterolf, we held that a district court order granting a stay of a prisoner's civil rights action pending exhaustion of his habeas remedies was reviewable as a collateral order, even though the decision concerning whether to grant a stay required the court to decide whether the underlying civil rights action challenged the constitutional validity of the prisoner's conviction. Marchetti, 968 F.2d at 965-68
 
 
 [3]
 In contrast, this court and the Supreme Court have found that orders that are a step toward disposition of the merits of the case, or orders that decide issues that are intertwined with the merits, do not meet the "separate" requirement of Cohen. For example, this court has held that an order denying court-appointed counsel is not "separate" from the merits because in order to determine whether a plaintiff is entitled to appointed counsel in a civil rights action the district court must "evaluate" the likelihood of success on the merits as well as the ability of the [plaintiff] to articulate his claim pro se...." Kuster, 773 F.2d at 1049 (internal citation omitted). These issues "cannot be assessed fairly until the substance of both his case and that of the defendant become known." Id.; see also Zucker v. Maxicare Health Plans, Inc., 14 F.3d 477, 485 (9th Cir.1994) (order excluding intervenors from plaintiff class not separable from the merits under Cohen ); Orange County, 52 F.3d at 823 (order expunging lis pendens is not appealable under Cohen because it requires consideration of probable validity of plaintiff's claim and is therefore not separable from the merits). Similarly, the Supreme Court has held that an order denying or decertifying a class is not "separate" under Cohen because the determination under Rule 23(b)(3) is intimately involved with the merits of the claims; moreover, the order is subject to effective review after final judgment. Coopers & Lybrand v. Livesay, 437 U.S. at 469; see also Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 439 (1985) (orders disqualifying civil trial counsel are not separable from the merits because to show that the right to counsel of one's choice was violated, one must show prejudice, i.e., assess the effect of the disqualification on the final judgment)
 
 
 [4]
 See, e.g., James v. Jacobson, 6 F.3d 233 (4th Cir.1993) (order denying plaintiffs who were suing doctor for torts arising out of wrongful artificial insemination leave to proceed anonymously was appealable under the collateral order doctrine); Doe v. Stegall, 653 F.2d 180 (5th Cir.1981) (order denying plaintiffs who challenged religious prayer and Bible reading in school leave to proceed anonymously appealable under collateral order doctrine); Southern Methodist Univ. Ass'n v. Wynne & Jaffe, 599 F.2d 707 (5th Cir.1979) (order requiring disclosure of plaintiffs' identities in action alleging sex discrimination appealable under collateral order doctrine)
 
 
 [5]
 For a more detailed discussion of see infra p. ----
 
 
 [6]
 It bears emphasizing that if the interlocutory appeal is not allowed in this case, the pseudonym order will be effectively unreviewable after final judgment because any relief granted at that time will have already been rendered moot. Although the reviewability of an order after final judgment is only one of Cohen's factors, it is one upon which the Supreme Court has placed significant emphasis in determining appealability. See, e.g., Abney, 431 U.S. at 660-61 (double jeopardy protects right not to be tried twice, a right which is effectively unreviewable on appeal); Flanagan v. United States, 465 U.S. 259, 266-67 (1984) (pretrial order disqualifying attorney is not immediately appealable, in part because it "is in no danger of becoming moot upon conviction and sentence"); United States v. Hollywood Motor Car Co., 458 U.S. 263, 265-70 (1982) (per curiam) (denial of motion alleging vindictive prosecution is not immediately appealable, because the asserted right "is simply not one that must be upheld prior to trial if it is to be enjoyed at all") United States v. MacDonald, 435 U.S. 850, 860-61 & n. 7 (1978) (same, regarding denial of motion alleging violation of the Speedy Trial Clause). Here, there is no question that in order to uphold the Appellants' "right" to proceed under pseudonyms, we must uphold that right now, if at all
 
 
 [7]
 See Roe v. Wade, 410 U.S. 113 (1973) (abortion); Doe v. Deschamps, 64 F.R.D. 652 (D.Mont.1974) (abortion); and Doe v. Carleson, 356 F.Supp. 753 (N.D.Cal.1973); Doe v. Lavine, 347 F.Supp. 357 (S.D.N.Y.1972) (illegitimacy)
 
 
 [8]
 In discussing the common law right to privacy the Reporter's Committee stated:
 [B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person. In an organized society, there are few facts that are not at one time or another divulged to another. Thus the extent of the protection accorded a privacy right at common law rested in part on the degree of dissemination of the allegedly private fact and the extent to which the passage of time render it private.
 Id. at 763.
 
 
 [9]
 See also id. at 769 (noting individual's privacy interest in restricting disclosure of past criminal history which, although once public, may have been wholly forgotten)
 
 
 [10]
 The court also failed to recognize that identifying Appellants by name in this litigation will highlight to the members of Appellants' current communities (the two Appellants who have been convicted of sex offenses committed their crimes and were convicted elsewhere), that Appellants previously committed highly stigmatizing crimes. Although this information was previously available to those who searched for it, the information will now be placed before the public in what has already been a highly publicized case. See, e.g., E.R. 5-7 (articles describing the "anonymous" challenge to Alaska's sex offender registration law by "two convicted sex offenders")
 
 
 [11]
 The district court stated that "[t]he court is simply not convinced that the local community in general will turn violently upon plaintiffs if their names appear afresh in connection with sex crimes committed years ago." E.R. 77. The court, however, cites no evidence for this belief. Nor does it discuss specific reasons for rejecting Appellants' submission of articles discussing retaliation toward former sex offenders in other communities
 
 
 [12]
 In addition, others (such as Appellant "Jane Doe") who were never convicted of sex offenses but who are closely associated with one of the previously convicted appellants, will also be placed at risk of stigmatization and perhaps retaliation. For example, assuming that there is further media coverage of this case, identifying appellants by name, appellants could be subjected to suggestions from neighbors to move, harassing phone calls or mail, threats, or outright violence. See E.R. 4 (article entitled, Child-Rapist Registers In Snohomish County; Same Place Drove Him Out In July, which describes the community's often violent and ultimately successful efforts to drive the sex offender out). Again, the fact that Jane Doe's marriage is a matter of public record, see E.R. 78, does not mean she risks no retaliation from her participation in this lawsuit or from the wide publicity of her husband's former conviction